[No. 24291-1-I. Division One. August 13, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES LAVELL SLY, *Appellant.*

*Dawn Monroe* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeanette M. Dalton, Deputy,* for respondent.

PEKELIS, J.—James Sly appeals convictions of three counts of robbery in the second degree. He first contends that the information was defective because it failed to allege the element of intent, a nonstatutory element of robbery. He also contends that the trial court abused its discretion in imposing an exceptional sentence.

## I

Based on an incident which occurred about 1 a.m. on August 9, 1988, James Sly was charged with four counts of robbery in the second degree. He was convicted on three of the counts. The information charged these three counts as follows:

> That the defendant James Lavell Sly, together with others, in King County, Washington, on or about August 9, 1988, did unlawfully take personal property, to–wit: lawful United States currency from the person and in the presence of [the victim], against his will, by the use or threatened use of immediate force, violence and fear of injury to such person or his property and the person or property of another;
> Contrary to RCW 9A.56.210 and 9A.56.190, and against the peace and dignity of the state of Washington.

The victims were Sukhendre Prasad, James Prasad, Vidya Sharma and Barma Sharma. The victims are all from Fiji Island. Sukhendre, James and Vidya are originally from India, while Barma is Fijian. The victims' native language is Hindi, but they speak and understand English.

The night of the robberies, Sukhendre Prasad had borrowed his sister Vidya Sharma's car to pick up their parents at the airport. He began having problems with the car and decided to return to Vidya's house. On the way there, he was involved in an accident with another car, which contained four men and four women. Sly got out of the car and demanded $50 from Sukhendre to pay for damage to the car. Sukhendre then took Sly and the other men to his sister's house to get money.

At Vidya's house, Sukhendre asked her for money to give to the men. Vidya woke her husband, Barma Sharma, and explained the situation to him. Barma called James Prasad, Sukhendre's and Vidya's brother, and asked him to come over with $100. Barma then went outside and asked the men to stop yelling. The men began circling Barma, and Sly grabbed a gold chain and pendant from Barma's neck. Sly also grabbed a similar gold chain and pendant from Sukhendre's neck.

Barma then told Vidya to go inside and call the police. Vidya came back outside with her purse, intending to give the men more money so they would leave. While she was standing on the porch, Sly threw a large rock which struck her in the chest. Vidya fell unconscious to the ground.

When James arrived, the men were throwing rocks at the house. Sly told James they wanted money to pay for the damage to their car, and James responded that insurance would pay for the damage. Sly began throwing rocks at James. He then took the $100 James had in his hand and told James he needed more money. Sly reached into James's car to get his car keys, which broke in the ignition. James then went into the house to get more money. When he went back outside, the men had gone.

The police arrived shortly after Sly and the other men had left. The police conducted an area search, and found and stopped a car matching the description given by the robbery victims. Sukhendre and James were driven to the scene of the car stop, where they identified Sly.

A neighbor who lived in the house across the street observed the altercation outside Vidya's house. She heard one of the men saying "'You no speaking motherfucker, you give me $50'—'You come over here and can't speak no motherfucking language, but you will give me $50 if you want your keys back.'"

The jury convicted Sly of robbery in the second degree in the counts involving Vidya, Barma and James, but acquitted him in the count involving Sukhendre. The trial court imposed an exceptional sentence of 55 months on each

count, with the sentences to run concurrently. The standard range for each count was 33 to 43 months.

The trial court justified the exceptional sentence on deliberate cruelty to the victims "based upon facts adduced at trial." The trial court also found that the victims were particularly vulnerable because "they were small in stature[,] from India and strangers to American customs and easily frightened."

Sly appeals his convictions and his exceptional sentence.

## II

Sly contends that his convictions should be reversed because the information charging him with second degree robbery failed to include the element of intent. Sly argues that although intent is not a statutory element of the offense, it is a necessary element which must be alleged.[1]

Sly raises this issue for the first time on appeal. Although the sufficiency of an information may be raised for the first time on appeal, this court has held that a stricter standard of review applies. *State v. Smith,* 49 Wn. App. 596, 598, 744 P.2d 1096 (1987), *review denied,* 110 Wn.2d 1007 (1988). Under these circumstances, "the information is immune from attack unless so obviously defective as not to charge the offense by any reasonable construction." *Smith,* 49 Wn. App. at 598. In *Smith,* the information failed to allege the element of knowledge, a nonstatutory element of the offense. The court nonetheless held that because the information had charged the crime in the language of the statute, it was not obviously defective. *Smith,* 49 Wn. App. at 599–600.

---

[1]Sly alternatively argues that intent is a statutory element of the offense under RCW 9A.04.060. This argument is without merit. RCW 9A.04.060 simply provides that the common law relating to the commission of crime shall supplement penal statutes. The statute was not intended to transform all common law elements into statutory elements.

■ Similarly here, although the statutory definition of robbery does not include any mens rea element, *see* RCW 9A.56.190,[2] intent is nonetheless a necessary element of the crime. *State v. Jones,* 34 Wn. App. 848, 850, 664 P.2d 12 (1983); *State v. Corwin,* 32 Wn. App. 493, 497, 649 P.2d 119, *review denied,* 98 Wn.2d 1004 (1982). Sly argues that the information was defective because it failed to include a necessary element of robbery. Were we to follow the analysis of *Smith,* we would summarily conclude that the information is not "obviously defective" because the information charged the crime in the language of the statute. *See Smith,* 49 Wn. App. at 600.

Sly urges this court to decline to follow *Smith,* arguing that it is inconsistent with *State v. Holt,* 104 Wn.2d 315, 704 P.2d 1189 (1985). Sly is correct that the court in *Holt* gave no indication that a stricter standard of review should apply when the sufficiency of the information is challenged for the first time on appeal. However, in *Smith,* the court distinguished the holding in *Holt* on the basis that the omission in that case was found to be fatal because it was an omission of "an express statutory element." *Smith,* 49 Wn. App. at 601. By contrast, the *Smith* court concluded that where the information contained all the statutory elements, probing review was not required.

Despite the fact that the Supreme Court denied review of *Smith,* we are not confident that it has accepted the

---

[2]"A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear." RCW 9A.56.190.

rationale of that case. Subsequent cases do not appear to distinguish between the level of scrutiny afforded when the information has been challenged below and when it has not.[3] Thus, rather than giving Sly's appeal the summary consideration *Smith* would suggest, we analyze the issue Sly raises in greater depth. Nevertheless, we ultimately reject his argument.

 Although Sly is correct that intent is a necessary element of robbery, it does not necessarily follow that the State must specifically allege in the information that a defendant acted with intent. This precise issue was addressed in a recent opinion of Division Two of this court, *State v. Strong*, 56 Wn. App. 715, 785 P.2d 464, *review denied*, 114 Wn.2d 1022 (1990). The court in *Strong* held that despite the omission of a specific allegation of intent, the information was not defective because it stated each of the statutory elements of robbery and also included facts which supported the nonstatutory element of intent. *Strong*, 56 Wn. App. at 717. The court held that under *State v. Leach*, 113 Wn.2d 679, 686–88, 782 P.2d 552 (1989), the information was sufficient to apprise the defendant of the crime charged. *Strong*, 56 Wn. App. at 717–19. We agree with the approach taken in *Strong* and with its reading of *Leach*.

In *Leach*, the Supreme Court held that an information is sufficient to charge a crime if it apprises the accused with reasonable certainty of the nature of the accusation. *Leach*, 113 Wn.2d at 686–88. "[I]t is not necessary to use the exact words of the statute if other words are used which equivalently or more extensively signify the words in the statute." *Leach*, 113 Wn.2d at 686. The *Leach* court expressly rejected the suggestion in *Holt*, 104 Wn.2d at 320, that the "essential elements" rule requires a charging document to list every statutory element of the crime charged. *Leach*,

---

[3]In fact, it is rare to find a case where it has been challenged below. Normally, such a challenge would result in an amendment of the defect if one exists.

113 Wn.2d at 688–89.[4] It is not necessary to "*list* every element of a crime. Rather, the charging document must allege sufficient *facts* to support every element of the crime charged." *Leach*, 113 Wn.2d at 688.

We therefore reject Sly's contention that failure to list the element of intent rendered the information charging him with second degree robbery defective. The relevant inquiry is whether the information contains words signifying the statutory elements and alleges sufficient facts to support any additional necessary elements. *See Leach*, 113 Wn.2d at 688.

Sly does not contend that the facts alleged in the information are insufficient to support the element of intent; his argument is that the absence of the term "intent" makes the information defective per se. However, as in *Strong*, the information here stated each of the statutory elements of robbery and included facts which arguably support the element of intent. We therefore conclude that the information, containing both the statutory elements of the crime and facts sufficient to support the element of intent, was sufficient to apprise Sly with reasonable certainty of the crime charged.

### III

Sly next contends that the trial court erred in imposing an exceptional sentence. He argues that there is no support in the record for the trial court's findings that the victims were particularly vulnerable and that he acted with deliberate cruelty.

■ Appellate review of an exceptional sentence is governed by RCW 9.94A.210(4) and involves a 2–part inquiry. *State v. Nordby*, 106 Wn.2d 514, 517, 723 P.2d 1117 (1986). The reviewing court must first determine if the sentencing judge's reasons for imposing an exceptional sentence are supported by the record. *Nordby*, 106 Wn.2d at 517–18.

---

[4]To this extent, we must disagree with the statement of another panel of this court in *State v. Hopper*, that "[t]he court in *State v. Leach*, did not change the basic rule in *Holt*." (Footnote omitted.) *State v. Hopper*, 58 Wn. App. 210, 212.

These reasons will be upheld if they are not clearly erroneous. *Nordby,* 106 Wn.2d at 518. The reviewing court then independently determines if, as a matter of law, the sentencing judge's reasons justify the imposition of an exceptional sentence. *Nordby,* 106 Wn.2d at 518.

Here, the trial judge found that Sly's victims were particularly vulnerable because they were "small in stature[,] from India and strangers to American customs and easily frightened." Sly argues that there is no showing in the record that the victims were small in stature and that, in any event, reliance on this factor was improper because he did not exploit the victims' size to facilitate commission of the robberies. He also argues that there is no support for the finding that the victims were strangers to American customs and easily frightened, pointing out that the victims were all fluent in English.

In *State v. Payne,* 45 Wn. App. 528, 726 P.2d 997 (1986), the trial judge found that the victim was particularly vulnerable because she was small and slight and not physically capable of resisting the defendant. As here, the State argued that although there was no evidence in the record that the victim was small, the trial judge's finding was justified because the victim was before the court. The court rejected this argument, stating that a trial court may only take judicial notice of facts not subject to reasonable dispute. *Payne,* 45 Wn. App. at 531. Absent any specific verification of these facts in the record, the court concluded that it was error to find the victim was particularly vulnerable because of her size. *Payne,* 45 Wn.2d at 531; compare *State v. Holyoak,* 49 Wn. App. 691, 695, 745 P.2d 515 (1987) (finding that victim's small size rendered her particularly vulnerable supported by specific references to victim's age, height and weight), *review denied,* 110 Wn.2d 1007 (1988).

While we agree with the general proposition that a trial court may only take judicial notice of facts not subject to reasonable dispute, we hold that Sly should have

objected to the trial court's findings about the victims' vulnerability in order to preserve the issue for appeal. The absence of an objection in the court below deprived the trial court of the opportunity to make a proper record to sustain its observation.

█ The trial court also based its determination that the victims were particularly vulnerable on its finding that they were strangers to American customs. The record supports this finding. While it is unclear how long Vidya and James had been in the United States, Barma had been in the United States for less than a year at the time of the robberies. In addition, although all of the victims could speak and understand English, it is apparent from the record that Sly and the others were motivated in part by the victims' lack of fluency in English and their cultural differences. These cultural differences also appeared to make the victims more vulnerable to Sly's demands.

We conclude that this finding, together with the court's findings that the victims were small in stature and easily frightened, in turn supports the court's determination that the victims were particularly vulnerable.

The trial judge's imposition of an exceptional sentence was also based on a finding that Sly "manifested cruelty to the victims based upon facts adduced at trial." The trial judge did not set forth what facts supported a finding of deliberate cruelty. However, the judge's comments at the sentencing indicate that this finding was based on the fact that Sly struck Vidya Sharma in the chest with a rock:[5]

> This was as bizarre activity as I've ever heard about. No. 1, the victims here culturally and physically were particularly vulnerable; and when you picked up that big rock out of the rockery and threw it at Ms. Sharma, I mean, it's just unbelievable. It should have been charged I think, as an armed robbery.

---

[5]Sly appears to concede that this court may turn to the transcript of the sentencing hearing and does not argue that the inadequacy of the written findings precludes review of the finding of deliberate cruelty.

This court recently defined deliberate cruelty as follows:

Deliberate cruelty consists of gratuitous violence, or other conduct which inflicts physical, psychological or emotional pain as an end in itself.

*State v. Strauss*, 54 Wn. App. 408, 418, 773 P.2d 898 (1989). Sly argues that the rock throwing was not gratuitous or egregious, but was for the purpose of facilitating commission of the robberies. Sly also argues that the trial judge erred in relying on the rock throwing because the trial judge's comments at the sentencing hearing show that he had determined that the rock throwing constituted the uncharged crime of armed robbery.

Vidya testified that she was hit in the chest with a stone while searching for money in her purse. Since Vidya was already complying with Sly's request for money, the rock throwing could not have been for the purpose of exacting compliance from the victims. Under these circumstances, we conclude that the rock throwing was gratuitous and was conduct which inflicted physical pain as an end in itself.

■ However, a sentencing judge may not base an exceptional sentence on facts which establish additional crimes. RCW 9.94A.370(2); *State v. Crutchfield*, 53 Wn. App. 916, 924, 771 P.2d 746 (1989). Here, the fact of the rock throwing constitutes the uncharged crime of robbery in the first degree, since Sly inflicted bodily injury in the commission of a robbery. *See* RCW 9A.56.200. The trial court thus erred in basing its finding of deliberate cruelty on the rock throwing, particularly in light of the trial court's express recognition that, in its view, the incident should have been charged as first degree robbery.

■ When the appellate court invalidates some of the trial court's reasons for imposing an exceptional sentence, remand is unnecessary if the appellate court can determine that the trial court deemed the valid reasons sufficiently significant to warrant the exceptional sentence imposed. *State v. Roberts*, 55 Wn. App. 573, 587, 779 P.2d 732, *review denied*, 113 Wn.2d 1026 (1989). If, on the other hand, the trial court placed considerable weight on the

invalid facts, remand is necessary. *Roberts,* 55 Wn. App. at 587; *see also State v. Brown,* 55 Wn. App. 738, 756, 780 P.2d 880 (1989) (remand unnecessary if trial court would impose same sentence without considering invalid factor), *review denied,* 114 Wn.2d 1014 (1990).

We cannot determine from the trial court's findings and conclusions whether it deemed the particular vulnerability of the victims sufficiently significant to alone warrant the exceptional sentence imposed. Therefore, we remand so that the trial court may reassess its imposition of the exceptional sentence and enter appropriate findings and conclusions.

In sum, we affirm Sly's convictions of three counts of second degree robbery and remand so that the trial court may reevaluate its imposition of an exceptional sentence.

COLEMAN, C.J., and BAKER, J., concur.