[No. 27896-7-I.   Division One.   May 17, 1993.]

THE STATE OF WASHINGTON, *Appellant,* v. ADRIEL
PAINE, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Catherine Shaffer, Deputy,* for appellant.

*Eric Broman* of *Washington Appellate Defender Association,* for respondent.

SCHOLFIELD, J. — The State appeals the imposition of an exceptional sentence below the standard range. Respondent/cross appellant Adriel Paine appeals his conviction on one count of possession of a controlled substance with intent to deliver, RCW 69.50.401, contending there was insufficient evidence for a conviction. We remand for resentencing.

## FACTS

On July 14, 1990, Seattle Police Officer Michael Alphin went to 7501 24th Avenue S.W., Apt. 6, to attempt to make a purchase of cocaine. Alphin wore plain clothing and drove an unmarked vehicle.

On arrival Alphin proceeded to apartment 6. He knocked and defendant Paine responded. After Alphin inquired as to whether he could get some "D" (rock cocaine), Paine asked him to come inside, and told him to keep the noise down so the neighbors would not hear. Alphin told Paine he was looking for a "20", which was one small rock of cocaine. Paine asked him if he was a police officer, and Alphin replied, "[N]o".

The apartment had a living room, kitchen, a bathroom and two bedrooms (referred to by Alphin as the "southeast" and "southwest" bedrooms). Paine took $20 from Alphin and went into the southeast bedroom, motioning for another black male, approximately 17 years of age, to accompany him. A short time later, Paine reappeared and motioned for Alphin to approach him. The two went into the southwest

bedroom, closed the door, and Paine handed Alphin a small piece of rock cocaine. As Alphin prepared to leave, Paine told him that if he came back for more to "keep it down" to prevent the neighbors from learning what was going on.

Alphin returned to the precinct and prepared a search warrant, which was subsequently issued and served at 7501 24th Avenue S.W., Apt. 6, on July 15, 1990, at 9 p.m. At the execution of the search warrant, Alphin identified Paine, who was standing on a sidewalk in front of stairs leading up to the apartments. Paine was detained and later placed in custody. He had no narcotics or paraphernalia in his possession.

Inside the apartment Alphin saw an individual, subsequently identified as William Jones, who had assisted Paine in the drug transaction the day before. Approximately five or six other persons were in the apartment as well, the majority of them juveniles.

Veronica Murphy, Paine's former girlfriend, lived in the apartment at 7501 24th Avenue S.W., although she was not home at the time of the raid. Paine had two children by Murphy: 7-year-old Aaron Paine and 16-year-old Adriel Paine, Jr. Aaron and Adriel resided in the southeast bedroom, along with another of Murphy's sons, 20-year-old De-Shawn Brown. Fifteen-year-old Adria Paine, a daughter of the defendant, was staying for the summer in the living room of the apartment. William Jones also resided periodically in the living room. Veronica Murphy slept in the southwest bedroom.

Alphin and Officer Christofferson searched the southeast bedroom, where they found a quantity of suspected rock cocaine in a large plastic garbage bag filled with clothing. In a closet, Christofferson located some crack cocaine pipes containing suspected cocaine and a large quantity of ammunition. The material seized tested positive for cocaine and weighed approximately 4.2 grams.

In the kitchen, Officer Donna O'Neal found a plastic container of baking soda, a baby food jar containing a "wet rock,

white rock" substance, a plate containing a white rock substance, cocaine, razor blades with cocaine powder on them, a crack pipe, and baggies similar to those found in the southeast bedroom. A crack pipe was found in the dining room, and nothing was found in the bathroom.

Officer Alm searched the southwest bedroom. In that room, he located several documents: (1) an arraignment notice bearing defendant's name (and birth date) from the Seattle Municipal Court — the notice contained no address and no envelope was found; (2) a civil demand letter bearing the name "Adriel Paine" (also stating no address and not designating "Jr." or "Sr."); (3) a document from the Culinary Workers Union, addressed to "Adriel Paine" at 7501 24th S.W. No. 6; and (4) numerous papers addressed to Veronica Murphy.[1]

Eric Taylor, a pretrial screener with King County Court Services, interviewed Paine on July 16, 1990, for the purpose of obtaining background information. Paine told Taylor he resided at 7501 24th Avenue S.W., Apt. 6, Seattle, Washington 98106. Paine stated that he rented the apartment, that he had lived there for 1 year with his girlfriend, Veronica Murphy, and that he had previously lived at 1916 East Cherry in Seattle. Paine stated his marital status was "[s]ingle, cohabitant", which Taylor interpreted as meaning single and living with someone. Paine provided Taylor with the apartment's phone number. He also told Taylor he had a problem with drugs.

By amended information filed October 3, 1990, Paine was charged with delivery of a controlled substance to Alphin on July 14, 1990, in violation of RCW 69.50.401(a) (count 1) and was also charged with possession with intent to deliver a controlled substance, contrary to RCW 69.50.401(a), with the alleged possession occurring July 15, 1990 (count 2).

The counts were severed for trial, and during trial on count 1, a mistrial was declared due to prosecutorial misconduct. Count 2 proceeded to trial on October 16, 1990.

---

[1]These included such items as a light bill, a church flyer, a letter from the Seattle Housing Authority, and a certificate of title from the State Department of Licensing.

Paine's defense regarding count 2 was generally that he did not reside at the apartment and possessed no cocaine. At a pretrial hearing, he testified that he did not use drugs and had no knowledge there were drugs in the apartment. He testified at trial that he did not sell any drugs to Alphin on July 14, 1990, did not live in the apartment at 7501 24th Ave. S.W., did not pay rent for the apartment, and kept no clothes there.

Paine was found guilty by a jury on count 2. He had an offender score of 1, and the seriousness level of his current offense was 8. The standard range for the offense was thus 26 to 34 months. The State recommended a standard range sentence of 34 months. The defense requested in part an exceptional sentence (downward) of 12 months in prison followed by inpatient substance abuse treatment.

On January 25, 1991, the court sentenced Paine to 12 months in jail and ordered 36 months of community placement. He was further ordered to follow all conditions set forth by Treatment Alternatives to Street Crime, and to enter and complete the Seadrunar program. On February 5, 1991, the State filed a motion for reconsideration of the sentence, but the record does not indicate the trial court's ruling on this motion.

### SUFFICIENCY OF EVIDENCE TO CONVICT

Paine contends that the evidence is insufficient to sustain a finding that he exercised dominion and control over the apartment where the drugs were found. The test for determining the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *Salinas*, at 201; *State v. Craven*, 67 Wn. App. 921, 928, 841 P.2d 774 (1992). A claim of insufficiency admits the truth of the State's evidence and all infer-

ences that reasonably can be drawn therefrom. *Salinas*, at 201; *Craven*, at 928.

■ Since Paine had no controlled substances on his person at the time of his arrest, the State had to prove possession through the doctrine of constructive possession. *See State v. Porter*, 58 Wn. App. 57, 60, 791 P.2d 905 (1990). To establish constructive possession, courts must " 'look at the *totality of the situation* to determine if there is substantial evidence tending to establish circumstances from which the jury can reasonably infer that the defendant had dominion and control of the drugs and thus was in constructive possession of them.' " *Porter*, at 60 (quoting *State v. Partin*, 88 Wn.2d 899, 906, 567 P.2d 1136 (1977)). Frequently, this involves establishing dominion and control over the premises where the drugs are found. *Porter*, at 60-61. *See also State v. Spruell*, 57 Wn. App. 383, 387, 788 P.2d 21 (1990) (showing dominion and control over the premises where drugs are found is a means by which constructive possession of drugs is often established).

In this case, several factors point to Paine's dominion and control over apartment 6 where the drugs were found. Paine's knowledge that narcotics were on the premises is demonstrated by his presence at the apartment on July 14, 1990, and the sale of cocaine to Alphin at that time. His request to Alphin to "keep it down" so that the neighbors would not discover what was going on indicates knowledge and an interest in ongoing drug trafficking. At least three of Paine's children live there. Veronica Murphy, Paine's present (or former) girlfriend and the mother of two of his children, also lived at the apartment. At the time of his arrest on July 15, Paine was standing outside the apartments on a sidewalk. An arraignment notice from Seattle Municipal Court bearing Paine's name and birthdate was found in the southwest bedroom, where Veronica Murphy slept. Two other documents bearing the name "Adriel Paine" were found in that room as well, although they did not specify "Jr." or "Sr.". Most compelling is Paine's statement to Taylor, on the day following his arrest, that he had resided at the apartment for the past year with

Veronica Murphy, and that his marital status was "single, cohabitant".

Paine relies upon *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969), where the court held the evidence insufficient to sustain a finding of constructive possession. However, *Callahan* can be readily distinguished on its facts from the case before us. In *Callahan*, the defendant had been staying on a houseboat for 2 or 3 days, but there was no evidence of tenancy or residence. Thus, there was virtually no evidence in *Callahan* to establish dominion and control of the premises.

Paine also cites *State v. Spruell*, *supra*, but the issue in *Spruell* was whether the defendant constructively possessed the drugs themselves. The evidence in *Spruell* indicated defendant was a mere visitor in the house where the drugs were located, and the State did not contend he was an occupant of the premises or had dominion and control over the premises where the drugs were found. Drawing all reasonable inferences from the evidence in favor of the State, we conclude that the evidence was sufficient to support a finding that Paine had constructive possession of the drugs in question.

## SENTENCING

Paine received an exceptional sentence downward of 12 months in jail, 36 months of community placement, and compliance with other conditions. The standard range for the offense was 26 to 34 months. The State recommended 34 months of incarceration, 1 year of community placement, and certain monetary payments.

The trial court entered written findings in support of the exceptional sentence as follows:

(1) The defendant was drug or alcohol dependent;
(2) The drug or alcohol dependency substantially contributed to the commission of the current offense;
(3) Incarceration will not prevent the commission of further crimes unless the defendant receives adequate treatment for his drug problems;
(4) The standard range does not provide drug treatment;
(5) Society would be better protected if the defendant were to receive treatment; and

(6) Treatment would be a more frugal use of the State's resources than incarceration in prison.

From the foregoing findings, it is evident that the sentencing court was basing its exceptional sentence downward on the fact that drug or alcohol dependency was a cause of the defendant's criminal activity and that he would not be adequately treated if he were given a standard range sentence. The law is clear that the reasons set forth in the sentencing court's findings do not amount to substantial and compelling reasons to support a sentence below the standard range.

In *State v. Pennington*, 112 Wn.2d 606, 772 P.2d 1009 (1989), the court first distinguished the circumstances in the case before it from the controlling facts in *State v. Bernhard*, 108 Wn.2d 527, 741 P.2d 1 (1987). The standard range sentence in *Bernhard* was 4 to 12 months. In approving the exceptional sentence in *Bernhard*, the court relied upon RCW 9.94A.383, which expressly allows a sentence of community supervision when, but only when, the defendant is subject to sentences of confinement for 1 year or less.

The *Pennington* court then defined the issue before it as whether or not a drug or alcohol problem, in and of itself, was a substantial and compelling justification for an exceptional sentence. At page 611, the court stated:

> Upon considering public policy and the purpose of this chapter, we hold, as a matter of law, that a drug or alcohol problem in and of itself is not a substantial or compelling reason justifying imposition of an exceptional sentence.

In *State v. Harper*, 62 Wn. App. 69, 813 P.2d 593 (1991), *review denied*, 118 Wn.2d 1017 (1992), the State appealed the imposition of an exceptional sentence of 18 months' in-house drug rehabilitation instead of a standard range of 43 to 57 months' confinement for two burglary convictions. The sentencing court's reasons for the exceptional sentence were Harper's long history of drug addiction being a primary reason for commission of the crime, that further incarceration would not deter Harper from future crime, that adequate drug treatment was the only reliable way to prevent

future crime, that Harper was amenable to treatment and the community would be better protected if Harper were placed in treatment. It is quite apparent that the basis for the exceptional sentence in *Harper* is virtually identical to the basis for the exceptional sentence in the case now before us. After review of *State v. Pennington, supra, State v. Estrella*, 115 Wn.2d 350, 798 P.2d 289 (1990), *State v. Bernhard, supra, State v. Shove*, 113 Wn.2d 83, 776 P.2d 132 (1989), and other cases, the *Harper* court concluded that to base an exceptional sentence downward for the reasons employed by the court sentencing Harper would produce disparate results directly contrary to the first stated purpose of the Sentencing Reform Act of 1981 — that the punishment for a criminal offense be proportionate to the seriousness of the offense and the offender's criminal history. Harper's sentence was reversed and the case remanded for resentencing within the standard range.

In *State v. Laik*, 62 Wn. App. 734, 815 P.2d 822 (1991), *review denied*, 118 Wn.2d 1011 (1992), the court was faced with findings quite similar to those present here and found no substantial and compelling reason to support a sentence below the standard range. These cases are dispositive. The reasons stated by the sentencing court to justify Paine's exceptional sentence downward, as a matter of law, are not substantial and compelling reasons justifying an exceptional sentence.

## SENTENCING ERROR NOT WAIVED

Paine argues that the State waived its right to appeal any sentencing error by failing to assign error to any findings of fact and in failing to object to the exceptional sentence at the sentencing hearing.

Our cases addressing the issue of whether sentencing errors can be reviewed for the first time on appeal do not appear to be in complete agreement.

In *State v. Danis*, 64 Wn. App. 814, 826 P.2d 1096, *review denied*, 119 Wn.2d 1015 (1992) and *State v. Sly*, 58 Wn. App. 740, 794 P.2d 1316 (1990), this court held that formal objection in the trial court is necessary to review an allegation of

sentencing error. In *Danis*, the defendant failed to object below to the inclusion of loss of overtime pay in a restitution order. The court declined to consider the issue on appeal. In *Sly*, the defendant argued on appeal the trial court incorrectly took judicial notice of a victim's size. The *Sly* court held at pages 748-49:

> While we agree with the general proposition that a trial court may only take judicial notice of facts not subject to reasonable dispute, we hold that Sly should have objected to the trial court's findings about the victims' vulnerability in order to preserve the issue for appeal. The absence of an objection in the court below deprived the trial court of the opportunity to make a proper record to sustain its observation.

A somewhat different view is demonstrated in *State v. Wiley*, 63 Wn. App. 480, 820 P.2d 513 (1991). The State did not object in the trial court to Wiley being sentenced to an exceptional sentence downward. Wiley argued his sentence was not reviewable because it was not objected to below. The State argued that it is not necessary to raise the objection below where the sentencing court exceeded its statutory authority in imposing a sentence that is contrary to law. The *Wiley* court accepted the State's legal position, stating at page 482:

> Issues raised for the first time on appeal ordinarily will not be considered. *State v. Anderson*, 58 Wn. App. 107, 110, 791 P.2d 547 (1990). When the alleged error is that the trial court exceeded its statutory authority by imposing a sentence that is contrary to law, however, the issue may be raised on appeal for the first time. *Anderson*, 58 Wn. App. at 110; *State v. Loux*, 69 Wn.2d 855, 420 P.2d 693 (1966), *cert. denied*, 386 U.S. 997 (1967). The rationale is that a trial court exceeds its jurisdiction when it imposes a sentence contrary to law, *State v. Sargent*, 36 Wn. App. 463, 464, 674 P.2d 1268 (1984); *State v. Silvernail*, 25 Wn. App. 185, 193, 605 P.2d 1279, *review denied*, 93 Wn.2d 1021, *cert. denied*, 449 U.S. 843 (1980), and a party can assert for the first time on appeal the lack of trial court jurisdiction. *Anderson*, 58 Wn. App. at 110; RAP 2.5(a)(1).

The *Wiley* court concluded, however, that the trial court did not exceed its statutory authority, and thus the alleged error was not jurisdictional.

In *State v. Anderson*, 58 Wn. App. 107, 791 P.2d 547 (1990), defense counsel did not raise the objection at sentencing that the court's sentence violated the 300 percent rule of RCW 13.40.180(2). This, however, was the sole issue argued on appeal. The *Anderson* court acknowledged the general rule that an issue will not be heard for the first time on appeal and then stated at page 110:

> However, a challenge to a sentence that is contrary to law may be raised on appeal for the first time. *State v. Loux*, 69 Wn.2d 855, 420 P.2d 693 (1966), *cert. denied*, 386 U.S. 997 (1967); *see also State v. Sargent*, 36 Wn. App. 463, 464, 674 P.2d 1268 (1984). Since Anderson argues that the sentence violates RCW 13.40.180(2), he may raise the issue for the first time on appeal.

The case relied upon in *Anderson*, *State v. Loux*, 69 Wn.2d 855, 420 P.2d 693 (1966), *cert. denied*, 386 U.S. 997 (1967), does not discuss waiver of a sentencing error by failing to raise the objection below. However, the *Loux* court held that an erroneous sentence entered below with the consent of the defendant and the State had to be corrected. The court stated that the court "has the power and duty to correct the error upon its discovery." *Loux*, at 858. At page 858, the *Loux* court also stated:

> Here, as in that case, the consent of the parties and concurrence of the court could not serve to bind the state of Washington in the face of the provisions of the statute. The portion of the judgment and sentence which was in excess of the court's jurisdiction cannot be regarded, but in disregarding it, it is not necessary to strike down as void the balance of the judgment and sentence.

Following the reasoning in *Loux*, if a defendant does not have the authority to consent to an unlawful sentence in the sentencing court, it arguably follows that the court is not prevented from correcting an unlawful sentence on appeal, whether or not the error was first raised with the trial court.

In *State v. Sargent*, 36 Wn. App. 463, 674 P.2d 1268 (1984) and *State v. Silvernail*, 25 Wn. App. 185, 605 P.2d 1279, *review denied*, 93 Wn.2d 1021, *cert. denied*, 449 U.S. 843 (1980), this court held that a trial court acts in excess of its

jurisdiction if it imposes a sentence which is contrary to law. In both cases, the Court of Appeals cited and relied upon *Loux.*

In our research, we have found no cases explaining the distinction between the imposition of a sentence contrary to law — which is purportedly outside the court's jurisdiction — and other types of cases where a trial court acts without authority or contrary to existing law. We have discovered no explanation why the court acts without jurisdiction in the unlawful sentencing cases, but not in the others.

RAP 2.5(a)(1) permits error based on lack of trial court jurisdiction to be raised for the first time on appeal. The predecessor to RAP 2.5(a)(1) was Rule on Appeal 43, 34A Wn.2d 47 (1951), which permitted an error to be raised for the first time on appeal where the court had "no jurisdiction of the cause". *State v. Davis*, 41 Wn.2d 535, 538, 250 P.2d 548 (1952).

If a court has "no jurisdiction of the cause", it would have no jurisdiction to take any action, and any judgment entered would be void. "No jurisdiction of the cause" would mean that the court had no power to hear and decide it. Our research does not enlighten us on whether the change from "no jurisdiction of the cause" to "lack of trial court jurisdiction" was intended to change the rule from no jurisdiction to hear the case to one where the trial court lacked subject matter jurisdiction to enter a particular sentence.

Without deciding that issue, however, it appears to us that the cases addressing the review of sentencing errors on appeal have established a common law rule that when a sentencing court acts without statutory authority in imposing a sentence, that error can be addressed for the first time on appeal.

A justification for the rule is that it tends to bring sentences in conformity and compliance with existing sentencing statutes and avoids permitting widely varying sentences to stand for no reason other than the failure of counsel to register a proper objection in the trial court.

The exceptional sentence in this case was based upon reasons which do not qualify as substantial and compelling reasons justifying an exceptional sentence, as required by RCW 9.94A.120(2). For this reason, the case must be reversed and remanded for resentencing.

It is so ordered.

BAKER and KENNEDY, JJ., concur.

Review denied at 122 Wn.2d 1024 (1993).