# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PCL CONSTRUCTION SERVICES, INC., | DIVISION ONE |
| Appellant, | No. 85089-0-I |
| v. | UNPUBLISHED OPINION |
| KENNETH GREEN and DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | |
| Respondents. | |

DWYER, J. — PCL Construction Services, Inc., appeals from the order of the superior court affirming the Board of Industrial Insurance Appeals' order allowing Kenneth Green's workers' compensation claim. On appeal, PCL Construction asserts that substantial evidence does not support the superior court's finding that Green aggravated a preexisting right shoulder injury while lifting heavy materials in the course of working as a laborer for PCL Construction. PCL Construction also asserts that the superior court, when issuing its oral ruling, improperly took judicial notice of certain facts. Concluding that substantial evidence supports the superior court's finding and that PCL Construction failed— in several ways—to preserve its assertion of allegedly improper taking of judicial notice, we affirm.

I

On October 28, 2019, PCL Construction hired Green to work as a laborer on the Koda Condominium Project, a 17-story high-rise condominium construction project in Seattle. Prior to initiating this work, Green had a history of right shoulder acromioclavicular (AC) joint separation.[1] Ten days later, on November 6, after Green had worked nine eight-hour shifts, he was told that his employment with PCL Construction was being terminated. During that conversation, Green mentioned that he had pain in his right shoulder. PCL Construction called a paramedic, who examined his right shoulder, and he was later brought to urgent care where he was examined, x-rays were taken, and the resulting radiographs showed a right shoulder AC joint separation.

Green subsequently filed an application for industrial insurance benefits. The Department of Labor and Industries allowed his claim. PCL Construction appealed the Department's determination to the Board of Industrial Insurance Appeals, and an evidentiary hearing before Industrial Appeals Judge (IAJ) Steven Straume ensued. During that hearing, several witnesses were called to testify, including Green, a former supervisor of the Koda Condominium project, and two medical experts, Patrick Bays, M.D., and Sean Haloman, M.D.

Green testified that he was hired by PCL Construction to work as a concrete hand and that the work involved constant heavy lifting. He testified that, as a concrete hand working on a high-rise construction project, he would assist

---

[1] The parties do not dispute that Green had a right shoulder condition that predated his employment with PCL Construction.

with constructing concrete decks by laying down plywood forms into which the concrete would be poured and setting up metal support beams underneath the plywood forms. He further testified that, after the concrete had solidified, he would assist with taking down the metal support beams and then prying off the plywood forms.

Green testified that the work that PCL Construction hired him to do included removing the metal beams from the plywood forms, stacking those beams into piles, prying the plywood forms off the concrete using a rotary hammer, sweeping up the wood, concrete, and rebar debris into a large "tippy tote" wheeled cart, pushing that cart up to a larger dumpster located on a higher floor, and lifting and dumping the contents of the cart into the dumpster. He testified that, when he was working with the metal beams, he would release a form beam from its support, drop it onto his shoulder, and then walk it over to the stack of beams. He testified that he thought that each beam weighed between 60 to 120 pounds and that the wheeled carts, when loaded down, weighed between 250 to 350 pounds.

Green testified that he injured his shoulder on November 5. He testified that, throughout the whole day, he had been taking down leftover metal beams, putting them onto his shoulder, and then stacking them. A portion of his deposition admitted into evidence during the hearing reflected that, at some point during the day, he heard a snap in his right shoulder while removing the concrete support forms. Green further testified that, on the morning of November 6, he woke up with pain and swelling in his shoulder. He testified that he did not tell

his coworkers or PCL Construction officials about his shoulder pain that day because he really wanted the work and wanted to keep working until the project ended.

Green testified that the paramedic who evaluated his shoulder told him that he needed "to go to the hospital because there was some swelling." Green testified that he then went to an urgent care clinic and had x-rays of his right shoulder taken, and the examining medical professional told him that his shoulder was swollen.

A former supervisor for the Koda Condominium Project testified that Green was hired to tear down strips of plywood using a rotary hammer, remove residual metal support beams, and then clean up afterward. He testified that the clean-up efforts typically involved placing wood, concrete, and rebar debris into 55-gallon trash containers, placing the contents of those containers into wheeled carts, and then bringing and dumping those wheeled carts into a dumpster.

Dr. Bays, a medical expert, testified that he had reviewed Green's medical records but had not examined, met with, or spoken with Green. Dr. Bays testified that he had reviewed Green's right shoulder x-rays and that they showed evidence of a prior injury.[2] Dr. Bays also testified that swelling is a symptom of right shoulder AC joint separation.

Dr. Haloman, another medical expert, testified that he had examined and treated Green for his right shoulder condition. Dr. Haloman testified that, during

---

[2] Dr. Bays ultimately opined that Green's right shoulder injury was not caused by the work that Green was doing on behalf of PCL Construction.

4

Green's initial medical appointment in mid-November, he reviewed the right shoulder x-rays and, on physical examination, determined that the majority of Green's pain was coming from the AC joint of his right shoulder. Dr. Haloman testified that he diagnosed Green with a grade 3 AC joint separation, constituting a complete tear of the ligaments of that joint.[3] Dr. Haloman testified that, after Green's participation in physical therapy did not successfully reduce Green's symptoms, he performed a complete AC joint repair on Green's right shoulder. Dr. Haloman further testified that, during that surgery, he determined that Green's AC joint separation was, in actuality, a grade 5 separation.

Additionally, the Department elicited the following from Dr. Haloman:

Q. What was your understanding or what is your understanding of the mechanism of injury?
A. My understanding was that he had been lifting heavy concrete and other objects at work and felt a tearing sensation of the shoulder and then had significant pain afterwards.
. . . .
Q. Returning to your understanding of the mechanism of injury, are you familiar with high-rise construction?
A. Vaguely.
Q. If it was described to you in more detail that high-rise construction labor includes lots of heavy lifting including concrete debris cleanup for an entire shift, is that the kind of weight or stress necessary to cause a third-degree AC joint separation?
A. Depending on the poundage required, it potentially could be the way it happens. A lot of times, most classically, it's a fall onto the shoulder that creates the separation; however, if he did have a pre-existing injury to that area, any extra load more than normal could disrupt the remaining tissue.
. . . .

---

[3] Dr. Haloman also diagnosed Green with right shoulder glenohumeral arthritis.

> Q. Dr. Haloman, can direct significant downward force on the shoulder cause the disruption described or observed in Mr. Green's injury?
>
> A. Yes.
>
> Q. And this was his right shoulder, correct?
>
> A. Correct.

Dr. Haloman also testified that, although a grade 5 AC joint separation would not typically be caused by lifting something very heavy, such a significant grade of separation "can be seen if you have a prior injury and that it's worsened by something else." Dr. Haloman later clarified that the opinions to which he testified were made on a medically more probable than not basis.

IAJ Straume issued a proposed decision and order affirming the Department's allowance of Green's claim, which PCL Construction appealed. The Board denied PCL Construction's appeal and adopted IAJ Straume's proposed order as its decision and order.

PCL Construction appealed the Board's decision and order to the King County Superior Court. The superior court affirmed that order, finding that Green "sustained an industrial injury on November 5, 2019, when he was lifting heavy materials, such as concrete and wood debris and aggravated his right shoulder separation."

PCL Construction now appeals.

II

PCL Construction asserts that substantial evidence does not support the superior court's finding that Green sustained an injury to his right shoulder while in the course of his employment with PCL Construction. We disagree.

6

We recently described the applicable standard of review for workers' compensation claims:

> Washington's Industrial Insurance Act, Title 51 RCW, governs judicial review of workers' compensation cases. Rogers v. Dep't of Lab. & Indus., 151 Wn. App. 174, 179, 210 P.3d 355 (2009). We review the superior court's decision, not the Board's order. RCW 51.52.140. As with the superior court's review of an administrative appeal, our review is based solely on the evidence and testimony presented to the Board. RCW 51.52.115; Bennerstrom v. Dep't of Lab. & Indus., 120 Wn. App. 853, 858, 86 P.3d 826 (2004).
> We review the superior court's decision in the same manner as other civil cases. Mason v. Ga.-Pac. Corp., 166 Wn. App. 859, 863, 271 P.3d 381 (2012). Specifically, we review whether substantial evidence supports the superior court's factual findings and whether the superior court's conclusions of law flow from those findings. Rogers, 151 Wn. App. at 180. We view the record in the light most favorable to the party who prevailed in superior court. Rogers, 151 Wn. App. at 180.

Smith v. Dep't of Lab. & Indus., 22 Wn. App. 2d 500, 506, 512 P.3d 566, review denied, 200 Wn.2d 1013 (2022).

Substantial evidence is evidence "in sufficient quantity to persuade a fair-minded person of the truth of the declared premise." Frank Coluccio Constr. Co. v. Dep't of Labor & Indus., 181 Wn. App. 25, 35, 329 P.3d 91 (2014). In considering whether the record sets forth substantial evidence, "'[w]e are not to reweigh or rebalance the competing testimony and inferences, or to apply anew the burden of persuasion.'" Rogers, 151 Wn. App. at 180-81 (quoting Harrison Mem'l Hosp. v. Gangon, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002)).

RCW 51.08.100 of the Industrial Insurance Act defines "injury" as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as

result therefrom." "In order to receive workers' compensation benefits pursuant to the [Industrial Insurance Act], the claimant must prove he is a 'worker injured in the course of his or her employment.'" Robinson v. Dep't of Lab. & Indus., 181 Wn. App. 415, 426, 326 P.3d 744 (2014) (quoting RCW 51.32.010). Medical expert testimony must establish the "causal connection between the industrial injury and the subsequent physical condition" on a more probable than not basis. Stampas v. Dep't of Labor & Indus., 38 Wn.2d 48, 50-51, 227 P.2d 739 (1951).

Here, the superior court found that Green "sustained an industrial injury on November 5, 2019, when he was lifting heavy materials, such as concrete and wood debris and aggravated his right shoulder separation."

The record contains substantial evidence to support the superior court's finding. As an initial matter, substantial evidence supports that Green's preexisting right shoulder issue was aggravated in the course of his employment with PCL Construction. Testimony presented at the hearing supports that Green was engaged in lifting heavy materials while working for PCL Construction. Both Green and a current PCL employee testified that, as part of tearing down the concrete form structures, Green was tasked with lifting—whether individually or in aggregate—heavy materials such as concrete and wood debris.

Evidence presented at the hearing also supports that such heavy lifting aggravated Green's preexisting right shoulder injury. It is undisputed that Green had right shoulder AC joint separation issues that predated his employment with PCL Construction. Green testified that, on November 5, he was lifting heavy materials as part of his work for PCL Construction and that, at some point during

8

that day, he felt a snapping sensation in his right shoulder.  Moreover, Dr. Bays testified that swelling is a symptom of a right shoulder separation injury, and Green testified that medical professionals who examined him on November 5— both the paramedic and the urgent care medical provider—told him that his right shoulder was swollen.[4]  Green also testified that he woke up on the morning of November 6 with pain and swelling in his right shoulder.  Given that, the record contains substantial evidence to support that Green's preexisting right shoulder issue was aggravated while lifting heavy materials in the course of his employment with PCL Construction.

The record also contains expert medical testimony establishing causation, on a more probable than not basis, between Green's injury and his subsequent physical condition.  Dr. Haloman testified that lifting heavy materials can cause a preexisting right shoulder separation to worsen and that any extra load more than normal could disrupt the remaining tissue.  Dr. Haloman further testified that, on a more probable than not basis, significant downward force caused Green's right shoulder to separate.[5]  Therefore, the record contains substantial evidence to support that Green sustained an industrial injury on November 5, 2019 by

---

[4] PCL Construction did not object to this portion of Green's testimony.

[5] PCL Construction asserts that Dr. Haloman's testimony was insufficient to establish medical causation because Dr. Haloman testified that Green's injury only *could* have been caused by significant downward force, rather than *was* caused by such force.  We disagree.  As discussed herein, Dr. Haloman clarified later at the hearing that the medical opinions to which he testified—including the causal relationship between the imposition of significant downward force and Green's right shoulder separation injury—were made on a more probable than not basis.  We are satisfied that Dr. Haloman's clarification established the requisite medical causation to support Green's claim.  See Stampas, 38 Wn.2d at 51 ("Medical testimony that there is a *possibility* of a causal relation is not sufficient to establish causation.  It must be made to appear that the injury *probably* caused the disability" (citing Seattle-Tacoma Shipbuilding Co. v. Dep't of Lab. & Indus., 26 Wn.2d 233, 234, 173 P.2d 786 (1946); Boyer v. Dep't of Lab. & Indus., 160 Wash. 557, 560, 295 P. 737 (1931))).

aggravating his preexisting right shoulder separation while lifting heavy materials for PCL Construction.

Thus, substantial evidence supports the superior court's finding. Accordingly, the superior court did not err.[6]

III

PCL Construction next asserts that the trial court erred by taking judicial notice of certain facts while issuing its oral ruling in this matter. Because PCL Construction has, in several ways, waived its right to assert such error, we decline to consider such an assertion.

ER 201 governs judicial notice of adjudicative facts. It sets forth, in pertinent part, that when a court takes such notice, "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." ER 201(e). A party's failure to object thereto "'deprive[s] the trial court of the opportunity to make a proper record to sustain its observation.'" Fusato v. Wash. Interscholastic Activities Ass'n, 93 Wn. App. 762, 772, 970 P.2d 774 (1999) (quoting State v. Sly, 58 Wn. App. 740, 749, 794 P.2d 1316 (1990)). Such

---

[6] PCL Construction nevertheless asserts that the superior court's determination must be reversed because Dr. Haloman predicated his medical opinion on Green's testimony and Green was purportedly not a credible witness. PCL Construction also asserts that Dr. Bays, its medical expert, presented ample medical testimony that supports reversing the superior court's determination. However, in considering a substantial evidence challenge on appeal, we do not "'reweigh or rebalance the competing testimony and inferences, or to apply anew the burden of persuasion.'" Rogers, 151 Wn. App. at 180-81 (quoting Gangon,110 Wn. App. at 485). We decline PCL Construction's invitation to do so here.

inaction fails to preserve a judicial notice issue for appellate review. <u>State v. Disney</u>, 199 Wn. App. 422, 433, 398 P.3d 1218 (2017).

Relatedly, we "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a); <u>see</u> <u>also</u> <u>Hoflin v. City of Ocean Shores</u>, 121 Wn.2d 113, 130, 847 P.2d 428 (1993). We also generally do not consider arguments raised for the first time in a reply brief. <u>Neighbors of Black Nugget Rd. v. King County</u>, 88 Wn. App. 773, 780, 946 P.2d 1188 (1997) (citing <u>Cowiche Canyon Conservancy v. Bosley</u>, 118 Wn.2d 801, 809, 828 P.2d 549 (1992)); <u>Fosbre v. State</u>, 70 Wn.2d 578, 583, 424 P.2d 901 (1967).[7]

Here, in early February 2023, the superior court issued an oral ruling stating, in pertinent part, that it would "take judicial notice that x-rays generally deal with bones." At that hearing, PCL Construction did not object to the court taking such notice nor did it request an opportunity to be heard on the matter.

Three weeks later, the superior court issued its written order, and PCL Construction again did not submit a request to be heard. Instead, PCL Construction appealed the trial court's order to this court, asserting, for the first time on appeal, that the superior court erred by taking such notice on the basis that the superior court purportedly did not follow the requirements of ER 201.

Later, in its reply brief before this court, PCL Construction presented for the first time a new theory: that the superior court erred because it was required

---

[7] The reason for the rule is plain; allowing an appellant to raise arguments for the first time in a reply brief unfairly deprives the respondent of an opportunity to respond, and presents the appellate court with an issue that has not been fully developed. <u>See</u> <u>State v. Hudson</u>, 124 Wn.2d 107, 120, 874 P.2d 160 (1994); <u>In re Marriage of Sacco</u>, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990).

to base its decision solely on the evidence set forth in the administrative record. PCL Construction now contends that we should allow it to present these assertions for the first time on appeal.

We decline to do so. By failing to timely raise both its objections and its novel assignment of error, PCL Construction has waived its right to present these assertions. First, prior to submitting its appeal to this court, PCL Construction did not—timely or otherwise—request an opportunity to be heard on the matter of the judicial notice taken by the superior court. PCL Construction did not do so either during the superior court hearing or at any time thereafter. By failing to request an opportunity to be heard, PCL Construction did not alert the superior court to the basis of its objection, thereby depriving the court "'of the opportunity to make a proper record to sustain its observation.'" Fusato, 93 Wn. App. at 772 (quoting Sly, 58 Wn. App. at 749).

Relatedly, PCL Construction raises its purported judicial notice error for the first time on appeal. Given that the superior court was deprived of an opportunity to make a proper record, PCL Construction's inaction also deprived this court of a record to review on the matter, thereby failing to preserve such issue for appellate review. RAP 2.5(a); Disney, 199 Wn. App. at 433. Finally, because issues raised for the first time in a reply brief are too late to warrant consideration, we also decline to consider PCL Construction's new legal theory advanced for the first time in its reply brief. Cowiche Canyon Conservancy, 118 Wn.2d at 809. Thus, for several reasons, PCL Construction has waived its right to assign error to the superior court's allegedly improper taking of judicial notice.

Accordingly, we conclude that the superior court did not err by affirming the order of the Board in this matter.

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____          _____
Díaz, J.                                          Hazelrigg, ACJ