[No. 17526-0-III. Division Three. January 28, 1999.]
TOMOE FUSATO, *Respondent*, v. WASHINGTON INTERSCHOLASTIC ACTIVITIES ASSOCIATION, *Appellant*.

---

[12]*State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

764

*John R. Olson*, for appellant.

*Chris A. Montgomery* of *Montgomery Law Firm*, for respondent.

BROWN, J. — Tomoe Fusato challenges the Washington Interscholastic Activities Association's (WIAA) residence and transfer rules, which, with few exceptions, forbid students from playing varsity athletics if they did not relocate to a school district with their parents. The superior court reversed the administrative decision against Ms. Fusato and found the WIAA's rules violated the Fourteenth Amendment's Equal Protection Clause. Although the matter is moot, we proceed and decide the trial court did not err taking judicial notice of certain facts. We conclude that although no fundamental right is threatened, the rule of strict scrutiny applies. This is so because the challenged

rules discriminatorily impact Ms. Fusato as a member of a suspect class based upon national origin and there is no showing of a compelling state interest being served by these rules. Additionally, the WIAA did not demonstrate that the least restrictive means were used to accomplish the regulatory purposes of their rules. Accordingly, we affirm.

## FACTS

Ms. Fusato, a Japanese National, moved from Okinawa to live with her aunt and uncle in Kettle Falls. The purpose of the move was to experience American culture and help ease the biases prevalent against Americans arising from recent criminal conduct on the part of American servicemen. She was told she was ineligible for varsity sports at Kettle Falls High School under WIAA rules.

The WIAA, a nonprofit organization, regulates interscholastic athletics at 385 secondary schools under RCW 28A.600.200. WIAA Rule 18.10.1(A) does not allow transferring students to be immediately eligible for varsity competition unless they transfer with their "entire family unit." Since Ms. Fusato moved without her parents a "hardship" was required for eligibility. Because neither the District 7 Eligibility Committee nor the Executive Board of the WIAA found her case to be a hardship under WIAA Rule 18.22.1, her eligibility was denied.

The Stevens County Superior Court, Judge Stewart, on appeal from the WIAA regulatory process, initially entered a temporary restraining order, permitting Ms. Fusato to play varsity sports pending final hearing. Judge Schroeder reviewed and maintained the temporary order at a continuation hearing. Finally, Judge Baker at the hearing on the merits, held the rules excluded a class of students based on national origin. The court further found the rules have a disparate impact based on this suspect class. The court took judicial notice that "almost every foreign exchange students and/or I-20 VISA students—it's almost unheard of in a high school setting—that such foreign students are

here with their parents." The court also took judicial notice that "a typical foreign exchange or I-20 VISA student is unable to ever establish a hardship under the transfer rules."

The trial court concluded there was no compelling state interest in the WIAA residence and transfer rules and, accordingly, found them to be in violation of the Equal Protection Clause in the Fourteenth Amendment of the United States Constitution.

At argument, the parties informed the court that Ms. Fusato had returned to Japan and is no longer a student at Kettle Falls High School and no longer subject to WIAA rules. We consider WIAA's appeal after discussing first whether it is moot.

## ANALYSIS
### A. Mootness

■■ Preliminarily, we must decide if this matter is moot. Arguably it is because we cannot order the relief originally sought. *Dioxin/Organochlorine Ctr. v. Pollution Control Hearings Bd.*, 131 Wn.2d 345, 932 P.2d 158 (1997). Ms. Fusato has returned to Japan and no longer seeks to participate in varsity sports at Kettle Falls High School. Even if she had remained, she would be eligible for varsity sports by virtue of meeting the one year residency requirement. We believe the question is " 'public [in] nature, . . . an authoritative determination . . . will provide future guidance to public officers;' " and it is likely that " 'the question will recur.' " *In re Detention of Swanson*, 115 Wn.2d 21, 25, 793 P.2d 962 (1990) (quoting *Dunner v. McLaughlin*, 100 Wn.2d. 832, 838, 676 P.2d 494 (1984)). In light of WIAA's status under state law, the number of schools affected, and the probability of recurrence, a decision here will provide guidance to the quasi-public officers of the WIAA. Therefore, we will decide the issues.

### B. Equal Protection

1. Issue. The issue is whether the trial court erred by us-

ing strict scrutiny and deciding the WIAA residence and transfer rules violated the Equal Protection Clause of the Fourteenth Amendment.

■ 2. Standard of Review. Constitutional challenges are reviewed de novo. *See Washam v. Sonntag*, 74 Wn. App. 504, 507, 874 P.2d 188 (1994) (addressing whether statute violates state constitution as issue of law subject to de novo review).

3. Discussion. The challenger of a rule, regulation or statute claiming an equal protection violation may have to meet one of three different legal standards for judging whether a violation exists. *City of Richland v. Michel*, 89 Wn. App. 764, 768-70, 950 P.2d 10 (1998). The choice is based upon the factual context, giving rise to different degrees of scrutiny in ascending order of difficulty of proof: strict, intermediate, or minimum.

> One of three standards of review has been employed when analyzing equal protection claims. *Strict scrutiny* applies when a classification affects a suspect class or threatens a fundamental right. *Intermediate or heightened scrutiny*, used by this court in limited circumstances, applies when important rights or semisuspect classifications are affected. The most relaxed (minimum) level of scrutiny, commonly referred to as the *rational basis or rational relationship test*, applies when a statutory classification does not involve a suspect or semisuspect class and does not threaten a fundamental right.

*State v. Manussier*, 129 Wn.2d 652, 672-73, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997) (citations omitted). It normally follows that the party seeking to uphold the rule, regulation, or statute generally prefers the minimum scrutiny standard, using the rational relationship test.

■ Deciding the degree or standard of scrutiny is our first task. *Harris v. Department of Labor & Indus.*, 120 Wn.2d 461, 476-77, 843 P.2d 1056 (1993). Here, Ms. Fusato argues for strict scrutiny and defends the trial court's decision while the WIAA argues for the lesser minimum

scrutiny standard and use of the rational relationship test. When strict scrutiny is involved, the classification will be upheld if it is shown to be necessary to accomplish a compelling state interest. *Westerman v. Cary*, 125 Wn.2d 277, 294, 892 P.2d 1067 (1994). If the complaining party demonstrates strict scrutiny is the proper test under the facts, then the burden shifts to the party seeking to uphold the rule, regulation, or statute "to show the restrictions serve a compelling state interest and are the least restrictive means for achieving the government objective. If no compelling state interest exists, the restrictions are unconstitutional." *First United Methodist Church v. Hearing Examiner*, 129 Wn.2d 238, 246, 916 P.2d 374 (1996).

If neither a suspect class is involved nor a fundamental right is threatened, the appropriate standard of review is the rational basis test. *Manussier*, 129 Wn.2d at 673. We answer three questions when deciding if the rational relationship test applies.

1. Does the classification apply alike to all members within the designated class?

2. Do reasonable grounds exist to support a distinction between those within and without each class? and

3. Does the class have a "rational relationship" to the purpose of the legislation?

*Harris*, 120 Wn.2d at 477. Because the trial court agreed with Ms. Fusato that the strict scrutiny test applies here, we examine it first.

■ ■ Washington courts have recognized there is no fundamental right to engage in interscholastic sports. *Darrin v. Gould*, 85 Wn.2d 859, 873, 540 P.2d 882 (1975). It follows that for Ms. Fusato to prevail, the WIAA residence and transfer rules must discriminate against a suspect class to warrant strict scrutiny review. Suspect classifications include those based on race, national origin, or alienage. U.S. CONST. amend. XIV; *State v. Wallace*, 86 Wn. App. 546, 552, 937 P.2d 200, *review denied*, 133 Wn.2d 1028 (1997).

Ms. Fusato alleges discrimination and disparate impact based on her national origin.

Under the WIAA residence and transfer rules, foreign exchange and I-20 VISA students, persons of identifiable foreign national origins, cannot compete at the varsity level because their parents usually do not accompany them to the United States. Thus, disparate impact based on alienage is present. Therefore, for persons of foreign national origin the sole recourse is to apply for hardship exception under the WIAA rules. WIAA rule 18.22.1 provides:

A. A hardship exists only when some unique circumstances concerning the student's educational, physical or emotional status exist and only when such circumstances are beyond the student's or, where applicable, their family unit' or legal guardian's control.

B. The circumstances must be totally different from those which exist for the majority or even a small minority of students (e.g., usual maturation problems or family situations which do not cause severe and abnormal emotional problems, and academic or athletic deficiencies in a school's curriculum or extracurricular activities do not constitute a hardship).

C. There must be no reason to believe that the decision and/or the execution of the decision concerning the student's academic status was for athletic purposes.

D. The burden of providing evidence that a hardship exists shall be borne by the student.

E. There shall be a direct, causal relationship between the alleged hardship and the student's inability to meet the specific eligibility rule(s).

The trial court found, and we agree, a typical foreign exchange or I-20 VISA student cannot meet the hardship criteria. While the alleged purpose of the rules is to prevent school "jumping" for athletic purposes and to ensure equal treatment, the practical effect is that some students are severely limited in eligibility based solely on their national

origin. Concerning similar residence and transfer rules, the Indiana Supreme Court points out:

> The rules as presently constituted penalize a student-athlete who wishes to transfer for academic or religious reasons or for any number of other legitimate reasons. Surely, denying eligibility to such transferees in no way furthers IHSAA objectives.

*Indiana High Sch. Athletic Ass'n v. Carlberg*, 694 N.E.2d 222, 238 (Ind. 1997). Similarly, the application of the rules to Ms. Fusato does not further their stated purposes.

■ However, the United States Supreme Court has repeatedly held that disparate impact, alone, does not violate the Fourteenth Amendment. *See Harris v. McRae*, 448 U.S. 297, 324 n.26, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980) (disparate impact based on financial circumstance); *Personnel Admin. v. Feeney*, 442 U.S. 256, 273, 99 S. Ct. 2282, 2293, 60 L. Ed. 2d 870 (1979) (disparate impact based on gender); *Washington v. Davis*, 426 U.S. 229, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976) (disparate impact based on race). Specifically, disparate impact of a suspect class does not trigger strict scrutiny unless the party challenging the government action demonstrates an element of purposeful discrimination or intent. *Macias v. Department of Labor & Indus.*, 100 Wn.2d 263, 269-70, 668 P.2d 1278 (1983).

The burden is on the party alleging discrimination to prove the existence of purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79, 93, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). The court must undertake "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)). Circumstantial evidence may suffice to establish purposeful discrimination. *Batson*, 476 U.S. at 93.

■ During Ms. Fusato's first administrative hearing, one of the committee members stated in response to an allegation that schools were abusing foreign exchange students:

I don't really think that was the reason. The abusing of the foreign exchange program was not the problem. The problem was that people were bitching and complaining about the fact that we[']re giving them [foreign students] special privileges and these other people are getting turned down[.] [Our] own people within the country, and that's why they changed the rule. I'm sure that's the reason.

For the WIAA to modify its rules to specifically discriminate against foreign exchange or I-20 VISA students in an attempt to make participation fairer for "our students" establishes discriminatory purpose or intent. Thus, strict scrutiny is warranted because we have both discriminatory impact based upon national origin or alienage and discriminatory purpose.

The WIAA now has the heavy burden of proving that it is necessary to discriminate based on national origin to further a compelling interest. It does not seek to meet this burden but argues solely that the rational relationship applies. In view of our rejection of that proposition, our analysis is complete. We decide the strict scrutiny test applies to these facts shifting the burden to the WIAA to show a compelling state interest. We conclude the WIAA has not met its burden to show a compelling state interest was served by the challenged rules. Further, the WIAA has made no effort to demonstrate that the least restrictive regulatory means have been employed to accomplish the stated purposes. Therefore, we hold the challenged residence and transfer rules are invalid under the equal protection clause of the federal constitution and affirm the trial court.

### C. Judicial Notice

 The issue is whether the trial court erred taking judicial notice that "a typical foreign exchange or I-20 VISA student is unable to ever establish a hardship under the transfer rules." A court's taking judicial notice of a matter raises a question of law reviewed de novo. *Krein v. Smith*, 60 Wn. App. 809, 811, 807 P.2d 906, *review denied*, 117

Wn.2d 1002 (1991). "Judicial notice may be taken at any stage of the proceeding." ER 201(f). Generally, judicially noticed facts are "not subject to reasonable dispute" in the sense that they are "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ER 201(b). Judicial notice may be taken of those "facts capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy and verifiable certainty." *CLEAN v. State*, 130 Wn.2d 782, 809, 928 P.2d 1054 (1996) (citing *State ex rel. Humiston v. Meyers*, 61 Wn.2d 772, 779, 380 P.2d 735 (1963)). Judicial notice may be taken whether or not requested by the parties. ER 201(c).

We conclude the court may take judicial notice that foreign exchange or I-20 VISA students rarely move in family units to the United States. Thus, the transfer rules prevent a typical foreign exchange or I-20 VISA student from establishing a hardship. No evidence of any foreign exchange or I-20 VISA student meeting the hardship requirements is brought to our attention. Furthermore, when the trial court took judicial notice the WIAA failed to object thus "[t]he absence of an objection in the court below deprived the trial court of the opportunity to make a proper record to sustain its observation." *State v. Sly*, 58 Wn. App. 740, 749, 794 P.2d 1316 (1990). The trial court did not err.

### D. Admissibility of Evidence

Lastly, the WIAA contends the superior court abused its discretion by excluding evidence as to the purpose of the residence and transfer rules. In its brief, it specifically discusses Marv Norman's declaration. A court's decision to admit or exclude evidence is subject to a manifest abuse of discretion standard of review. *Degroot v. Berkley Constr., Inc.*, 83 Wn. App. 125, 128, 920 P.2d 619 (1996).

Here, the WIAA fails to make any legal argument as to why the court abused its discretion. Furthermore, it

failed to make a part of the record a transcript of the court actually rejecting Mr. Norman's declaration. The record the WIAA references in its brief appears to concern a motion for reconsideration of two other declarations, not Mr. Norman's. Nevertheless, this discussion is obviated because all the declarations the WIAA tried to get in before the trial court are before us as part of our clerk's papers; therefore, subject to our review. Having considered the record, our views are unchanged.

## CONCLUSION

Even though the primary conflict is technically moot, we believe discussion is warranted because the core issue is likely to recur and involves a matter of substantial public interest that, when resolved, will provide future guidance to the WIAA officers. The trial court did not err taking judicial notice that Ms. Fusato, as a typical foreign exchange or I-20 VISA student, was unable to establish varsity eligibility under the WIAA rules because she did not move as part of a family unit with her parents.

We hold the trial court did not err applying the strict scrutiny test when deciding the WIAA residence and transfer rules violated Ms. Fusato's equal protection rights under the Fourteenth Amendment. Although Ms. Fusato cannot prove a fundamental right is threatened, she established she was a member of a suspect class based upon national origin or alienage. Upon her showing of disparate impact, together with discriminatory purpose or intent, the WIAA was required to meet the burden of showing a compelling state interest was served by the challenged rules. The WIAA failed to meet its burden and made no effort to demonstrate that the least restrictive regulatory means were used to accomplish the stated purposes of their rules.

We affirm.

Schultheis, C.J., and Sweeney, J., concur.

774

Reconsideration denied March 4, 1999.