# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56460-2-II |
| Respondent, | |
| v. | |
| MARCUS JOHN INMAN JR., | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Marcus J. Inman appeals his convictions for attempting to elude a pursuing police vehicle and second degree identity theft following his termination from drug court. Inman was terminated from drug court for possessing two canisters of carbon dioxide ($CO_2$), which violated his drug court contract that prohibited the possession of any "canister that could be used for huffing purposes."

We hold that (1) the drug court did not take judicial notice of the contents of the canisters, (2) a preponderance of the evidence supported Inman's termination from drug court, (3) the drug court stated the evidence it relied upon, (4) the judgment and sentence does not include a clerical error, (5) using someone else's name in a traffic stop constitutes identity theft, and (6) sufficient evidence supported Inman's identity theft conviction. Accordingly, we affirm.

FACTS

After multiple encounters with law enforcement, the State charged Inman with attempting to elude a pursuing police vehicle, second degree identity theft, and five counts of possession of a controlled substance. Inman was accepted into drug court. Inman signed a drug court contract in which he agreed as follows:

> 8. To not use, possess, buy or sell any mood or mind altering substances, synthetic compounds or designer drugs. I understand although these mood/mind altering substances may not be currently illegal, I agree any possession, use, buying or selling by me will result and be treated as a "use."

> 9. Any use of air duster or possession of air duster will be grounds for automatic termination from the program. This includes any other brand or any canister that could be used for huffing purposes.

Clerk's Papers (CP) at 49.[1] Inman further agreed:

> 24. If I am terminated from the Program, I agree and stipulate that the Court will determine the issue of guilt on the pending charge(s) solely upon a summary of the enforcement/investigative agency reports or declarations, witness statements, field test results, lab test results, or other expert testing or examinations such as fingerprint or handwriting comparisons, which constitute the basis for the prosecution of the pending charge(s) as contained in the Probable Cause Statement. I further agree and stipulate the facts presented by such reports, declarations, statements, and/or expert examinations are sufficient for the Court to find me guilty of the pending charge(s).

CP at 51. During his time in drug court, Inman achieved six months of sobriety. However, in December 2020, due to several failures to comply with his drug court contract—including submitting a diluted urine analysis, traveling outside the county without permission, failing to report for meetings, and drug uses—the State petitioned to terminate Inman from drug court.

---

[1] "'Huffing' refers to inhaling fumes to achieve a high." *State v. Burrus*, 17 Wn. App. 2d 162, 167 n.1, 484 P.3d 521, *review denied*, 198 Wn.2d 1006 (2021).

The drug court held a termination hearing and did not terminate Inman, but instead placed him on a "strict compliance contract."[2] CP at 104.

In January 2021, Inman was found to be in possession of two canisters that appeared to contain either $CO_2$, or nitrous oxide. The State again petitioned to terminate Inman from the drug court program because his conduct violated Provision 9 of his drug court contract. The petition contained an allegation that Inman stated that he possessed the $CO_2$ canisters for an airsoft gun.

At the termination hearing, Inman did not dispute the factual allegations in the petition. Instead, he emphasized that he did not use the $CO_2$ canisters "for anything other than recreational target shooting." RP at 17. The State argued that even if they contained only $CO_2$, the cartridges "could still potentially be used as an inhalant," which would violate the drug court contract. RP at 18. When the court asked Inman for a response, he had none. Then, the court stated,

> You were on a last chance contract and when I saw you in court a few weeks ago, it was around the time that I was talking to you about the incident where your car was searched by the Centralia police. And, on that occasion, you appeared to me to be under the influence. And we have since got a UA back from that time period which indicates that you did have meth in your system. And I don't know what the explanation for that is, but—so you had a use violation.
>
> And then those cartridges that were in your car. I didn't see them; I didn't examine them, but I was shown a picture of those. And they did not look like $CO_2$ cartridges. I've used $CO_2$ cartridges. I've also used the cartridges that are—to me— looks like nitrous oxide. That's what those looked like to me. Again, I didn't examine them. But I have used them for legitimate purposes and I know what they look like, and they look to me like the nitrous oxide. *Either way, whether $CO_2$ or nitrous oxide; they are a banned or contraband item.* So it doesn't really matter what I believe or not; those are items that violate your contract so I am going to terminate you from the program.

---

[2] In the "Marcus Inman Behavior Contract," referred to as the "strict compliance contract," Inman agreed to some additional treatment requirements, none of which are germane to this appeal. CP at 114.

Report of Proceedings (RP) at 23-24 (emphasis added). The drug court then terminated Inman from the program.

In February 2021, the trial court held a stipulated facts bench trial regarding Inman's underlying charges. Inman did not "have any factual disputes with the facts as laid out by the Prosecutor." RP at 27. The trial court entered findings of fact and conclusions of law. Relevant to Inman's argument, the trial court found that, during police questioning, "[t]he male, later to be identified as Marcus Inman, verbally identified himself verbally [sic] as 'Andrew L. Inocencio.'"[3] CP at 122.

The trial court found Inman guilty of attempting to elude a pursuing police vehicle, second degree identity theft, and five counts of possession of a controlled substance. At sentencing, the court vacated the five drug possession convictions under *State v. Blake*.[4] The court sentenced Inman on the two remaining charges and ordered his sentences to be served concurrently. The court also sentenced Inman in another case on the same day, stating that those sentences shall also be served concurrently to the sentence in the instant case. But the court did not make a notation on Inman's judgment and sentence that the sentence imposed in this matter shall be served concurrently with his other sentence imposed that day.

Inman appeals the judgment and sentence.

---

[3] Relevantly, the probable cause statement provided that during police questioning, Inman verbally identified himself as "Andrew L. Inocencio," and "Inman stated he lied about his name, because he had a misdemeanor warrant out of Lewis County." CP at 39.

[4] *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

ANALYSIS

Inman argues that the drug court improperly took judicial notice of the contents of the canisters, terminated him from drug court on insufficient and improper evidence, and failed to state the evidence upon which it relied. He argues that his judgment and sentence contains a scrivener's error. In a Statement of Additional Grounds (SAG), Inman also claims that the evidence did not support his conviction for second degree identity theft. Each of Inman's arguments fail.

## I. JUDICIAL NOTICE

Inman argues that the drug court violated his due process by improperly taking judicial notice that the canisters Inman possessed contained nitrous oxide. We disagree.

We review a trial court's exercise of judicial notice de novo. *Fusato v. Wash. Interscholastic Activities Ass'n*, 93 Wn. App. 762, 771, 970 P.2d 774 (1999). Judicial notice is "a court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact." *Judicial Notice*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also State v. N.B.*, 7 Wn. App. 2d 831, 835-36, 436 P.3d 358 (2019) (holding the trial court did not take judicial notice of a fact contained in the court's comment because that fact was not evidence, nor was it used it in an evidentiary manner, nor was it the basis for finding that an element of the crime was proved).

Here, when the trial court discussed whether the canisters contained $CO_2$ or nitrous oxide, the court said, "Either way, whether $CO_2$ or nitrous oxide; they are a banned or contraband item. So it doesn't really matter what I believe or not; those are items that violate your contract so I am going to terminate you from the program." RP at 23-24. This shows that the court did not

accept as true that the canisters Inman possessed contained nitrous oxide. Accordingly, the drug court did not take judicial notice that the canisters contained nitrous oxide.

## II. DUE PROCESS

Inman argues that the drug court termination violated his right to due process because the State failed to prove that he violated the drug court contract, and the court failed to state the evidence it relied upon when terminating him. We disagree.

Due process attaches to drug court proceedings. *State v. Varnell*, 137 Wn. App. 925, 929, 155 P.3d 971 (2007). Before termination from a drug court program, due process requires the State to provide the defendant notice and an opportunity to be heard, and requires the court to create a record of the evidence the court relied on to terminate the defendant from the program. *Varnell*, 137 Wn. App. at 930.

Additionally, the State must prove noncompliance with the drug court contract by a preponderance of the evidence. *State v. Cassill-Skilton*, 122 Wn. App. 652, 656, 94 P.3d 407 (2004). In evaluating the violations that lead to termination from drug court, the trial court acts in a similar capacity to when it evaluates alleged probation violations. *Cassill-Skilton*, 122 Wn. App. at 656. There, trial courts utilize their sound discretion to determine whether the evidence reasonably satisfies the court that the defendant breached the condition. *City of Aberdeen v. Regan*, 170 Wn.2d 103, 108, 239 P.3d 1102 (2010). Accordingly, we review terminations from drug court for an abuse of discretion.

A.      *The State's Burden*

Inman argues that the State failed to prove that he violated his drug court contract by a preponderance of the evidence because the State presented no evidence that $CO_2$ is a mood-

altering substance or can be used for huffing purposes, and the drug court relied on evidence that was not in the record to determine that $CO_2$ is a mood altering substance. We disagree.

First, the State petitioned to terminate Inman from drug court because he

> was found to be in possession of a canister of air which appeared to be either a carbon dioxide ($CO_2$) or nitrous ($N_2O$) cartridge. The Defendant made a statement to Drug Court Compliance Officer David Albright that the canister was a $CO_2$ cartridge for an airsoft gun.

CP at 112. The State's petition contained an allegation that Inman's possession of the air canisters violated Provision 9 of his drug court contract, which prohibited the use or possession of "any canister that could be used for huffing purposes." CP at 49.

At the termination hearing, Inman stated that he did not contest any facts in the State's petition. Inman stated that he took responsibility for the $CO_2$ canisters that were in his vehicle, claiming that he used the canisters to shoot his BB gun. The State emphasized that the $CO_2$ canisters "could still potentially be used as an inhalant," which would trigger automatic termination of the drug court contract. RP at 18. The court asked Inman for a response to that, and he had none.

Accordingly, the State proved, by the defendant's admission, that Inman possessed $CO_2$ canisters, which could "potentially be used" for huffing. And rather than argue that the $CO_2$ canisters could not be used for huffing, Inman argued that he used the canisters only for recreational shooting.

Inman now argues that the State failed to present sufficient evidence that the $CO_2$ canisters could be used for huffing.[5]

The evidence at the hearing was that Inman possessed two $CO_2$ canisters. The State provided no evidence that the $CO_2$ canisters could be used for huffing purposes.

The contract's language of "any canister that could be used for huffing" is broad. From its plain meaning, it appears to prohibit the possession of any canister that could be used to contain compressed gas. It was undisputed that Inman possessed canisters of compressed $CO_2$. Accordingly, we hold that the drug court did not abuse its discretion in finding that the State proved noncompliance with Inman's drug court contract by a preponderance of the evidence.

Next, Inman argues that the State failed to prove Inman's possession of the air canisters violated the terms of his contract because the drug court relied on a photograph that was not made a part of the record. The State concedes that it was a failure on its part to not make that photograph part of the record. However, this oversight does not require reversal.

Although the trial court looked at a photograph, it ultimately did not rely on any photograph to conclude that Inman violated his drug court contract. After reviewing the photograph showing the canisters, the drug court stated, "they did not look like $CO_2$ cartridges . . . [and they look to me] like nitrous oxide." RP at 23. But the court goes on to say that regardless of whether the cartridges contained $CO_2$ or nitrous oxide, the cartridges are banned

_____

[5] In response, the State cites to a report from the National Institute of Drug Abuse, and also claims, "One only needs to do a quick internet search and they can find different web forums of people discussing ways to use CO2." Br. of Resp't at 13. The State then cites to an internet forum where people discuss the dangers of huffing $CO_2$. But these citations point to evidence that the trial court never considered and is not part of the record on appeal, thus, we do not consider it. *LeMond v. Dep't of Licensing*, 143 Wn. App. 797, 807, 180 P.3d 829 (2008) ("This court will not consider allegations of fact without support in the record.").

8

items. Then the court said, "So it doesn't really matter what I believe or not." RP at 23-24.

Accordingly, we hold that the drug court did not rely on the photograph.

B.      *Failure to Enter Factual Findings*

Inman argues that the drug court violated his right to due process by failing to state the

evidence it relied upon when terminating him from drug court.

Inman cites *Marino* to support his argument. There, the court opined that "the trial court

needs to clearly state the evidence upon which the court relied," whether orally or in writing.

*State v. Marino*, 100 Wn.2d 719, 727, 674 P.2d 171 (1984). In *Marino*, the trial court made no

factual findings but held that it was "clear from the evidence" that the State's termination

decision was reasonable. *Marino*, 100 Wn.2d at 726. Nevertheless, the court held that there was

no error because there was ample evidence to show a violation of the agreement by a

preponderance of the evidence because the defendant did not contest the testimony that he had

failed to keep his counseling appointments, among other things. *Marino*, 100 Wn.2d at 726-27.

Because of the uncontroverted evidence, the appellate court found it unnecessary to remand for

factual findings. *Marino*, 100 Wn.2d at 727.

Here, unlike *Marino*, the drug court did not make a blanket statement that it was clear

from the evidence that the State's termination decision was reasonable. Rather, to support its

termination decision, the drug court stated that Inman possessed canisters, as he stipulated to,

and, regardless of whether the canisters contained $CO_2$ or nitrous oxide, the canisters violated his

contract. Accordingly, the drug court properly stated the evidence on which it relied.

We hold that Inman's right to due process was not violated by the drug court's

termination because the State proved by a preponderance of the evidence that Inman violated his

contract by showing that he possessed $CO_2$ canisters, and the trial court provided a clear statement of evidence upon which it relied.

## II. SCRIVENER'S ERROR

Inman argues that even if we affirm his convictions, we should remand to correct a scrivener's error because the judgment and sentence in this case does not contain a notation specifying that this sentence be served concurrent with a sentence from another case entered on the same day. The State argues that the judgment and sentence must include a notation only for a consecutive sentence, not a concurrent one. We agree with the State.

A scrivener's error or clerical mistake "is one that when amended would correctly convey the intention of the court based on other evidence." *State v. Priest*, 100 Wn. App. 451, 456, 997 P.2d 452 (2000). Appellate courts may address clerical mistakes under RAP 7.2(e) by allowing the trial court to enter the requested change. *Priest*, 100 Wn. App. at 456. RCW 9.94A.589(1)(a) provides that sentences imposed on the same day be served concurrently. When a trial court fails to expressly state the order of sentences, they are to run concurrently.[6] Consecutive sentences for current offenses are allowed only as an exceptional sentence. RCW 9.94A.589(1)(a). "Whenever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535. Thus, the Sentencing Reform Act of 1981 requires only that exceptional sentences be noted on a judgment and sentence.

---

[6] RCW 9.94A.589(1)(a) states that "current offenses" are to be served concurrently. "While the [Sentencing Reform Act of 1981] does not formally define 'current offense,' the term is defined functionally as convictions entered or sentenced on the same day." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 507, 301 P.3d 450 (2013).

Here, Inman provides no authority that requires a trial court to add a notation on a judgment and sentence where current offenses are to be served concurrently. Accordingly, remand is unnecessary.

### III. SAG

In a SAG, Inman presents two theories challenging the sufficiency of the evidence of his second degree identity theft conviction. First, he contends that the trial court erred because "using someone else's name in a traffic stop is not [identity] theft." SAG at 1. Second, he contends that the elements of the crime were not present in the discovery relied on by the trial court. We disagree.

Where a defendant stipulates that the facts are sufficient to convict him, we are not bound by that stipulation. *State v. Drum*, 168 Wn.2d 23, 33, 225 P.3d 237 (2010). Rather, whether the stipulated facts are sufficient to support the defendant's convictions is a question of law, which is reviewed de novo. *Drum*, 168 Wn.2d at 33. To determine whether the evidence is sufficient, the proper test is "'whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.'" *State v. Dollarhyde*, 9 Wn. App. 2d 351, 355, 444 P.3d 619 (2019) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

A person is guilty of identity theft when they "knowingly obtain, possess, use, or transfer a means of identification . . . of another person, living or dead, with the intent to commit, or to aid or abet, any crime." RCW 9.35.020(1). Second degree identity theft occurs when the defendant commits identity theft without obtaining certain items of value. *See* RCW 9.35.020(2), (3). "'Means of identification' means information or an item that is . . . personal to

or identifiable with an individual or other person, including: A current or former name of the person." RCW 9.35.005(3). Additionally, the means of identification must refer to a real person. *State v. Berry*, 129 Wn. App. 59, 67, 117 P.3d 1162 (2005). Verbally giving a law enforcement officer a means of identification of another person during a traffic stop to thwart the police's attempt to ascertain the individual's correct identity constitutes identity theft. *State v. Presba*, 131 Wn. App. 47, 55-56, 126 P.3d 1280 (2005).

Here, Inman argues that using someone else's name in a traffic stop is not identity theft. But RCW 9.35.020(1) clearly encompasses this exact behavior; thus, Inman's argument fails.

Next, under Inman's drug court contract, he stipulated that the trial court would "determine the issue of guilt on the pending charge(s) solely upon a summary of the enforcement/investigative agency reports or declarations, witness statements, field test results, lab test results, or other expert testing or examinations such as fingerprint or handwriting comparisons, which constitute the basis for the prosecution of the pending charge(s) as contained in the Probable Cause Statement." CP at 51. And at the stipulated facts bench trial, Inman did not "have any factual disputes with the facts as laid out by the Prosecutor." RP at 27.

The probable cause statement in this case stated that during police questioning, Inman verbally identified himself as "Andrew L. Inocencio," and "Inman stated he lied about his name, because he had a misdemeanor warrant out of Lewis County." CP at 39.

The evidence Inman stipulated to shows that Inman knowingly used Inocencio's name— a means of identification—because he admitted that he lied about his name. Additionally, Inocencio is a real person—he is Inman's cousin. The evidence further shows that Inman used Inocencio's name to thwart the police's identification of him so that they would not arrest him

12

due to the Lewis County Warrant. That shows he knowingly used a means of identification with the intent to commit a crime—thwarting police identification and the enforcement of a warrant. After viewing the evidence in the light most favorable to the State, any rational trier of fact could have found Inman guilty beyond a reasonable doubt of second degree identity theft.

CONCLUSION

The drug court did not err. The court did not take judicial notice that the canisters in Inman's possession contained nitrous oxide, a preponderance of the evidence supported Inman's termination from drug court, and the drug court stated the evidence it relied on. Moreover, Inman's judgment and sentence contains no clerical error requiring remand. Finally, sufficient evidence supported Inman's conviction for identity theft.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Maxa, J.

Veljacic, J.

13