[No. 11772–6–I.   Division One.   September 26, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. EVERETT
E. OSBORNE, ET AL, *Appellants.*

*Paul Acheson* and *Kinzel, Acheson & Cowan, Inc., P.S.,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Linda Walton, Deputy,* for respondent.

SCHOLFIELD, J.—Everett and Mary Osborne appeal the denial of their motions to withdraw pleas of guilty to charges of second degree murder. We affirm.

Shelly Lynn Everett died December 9, 1981, from injuries she received while at the home of her natural mother, Mary Osborne, and her stepfather, Everett Osborne. The defendants were arrested December 12, 1981, and charged with her murder. At their omnibus hearing, both defendants were represented by John Rosellini, but to avoid any potential conflict of interest, Michael Alfieri was retained to represent Mary Osborne. A CrR 3.5 hearing was held Janu-

ary 19, 1982, and statements of two witnesses were ruled admissible. A trial date of January 29, 1982, was scheduled.

On January 22, 1982, defense counsel obtained a continuance, and a new trial date of March 1, 1982, was set. On February 26, 1982, Mr. Alfieri moved for another continuance based on the mental condition of Mary Osborne. Dr. Thomas Goodman had evaluated her condition and reported she was very depressed, anxious, and fearful of enduring a trial. The report indicated she had definite suicidal ideation and tendencies. The judge considered the medical report and denied the continuance, but reset the trial for March 4, 1982.

Defense counsel interviewed the State's witnesses, and plea negotiations between counsel resulted in a prosecution decision to lower the sentencing recommendation from life imprisonment to 30 years for Everett Osborne and 20 years for Mary Osborne.

On March 1, 1982, the defendants entered pleas of guilty, stating they were not guilty, but believed the jury would convict them, and wished to take advantage of the prosecution's lower sentencing recommendation as approved in *North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970) and *State v. Newton,* 87 Wn.2d 363, 552 P.2d 682 (1976).

On May 5, 1982, the Osbornes appeared for sentencing and their new counsel moved to withdraw the guilty pleas. Argument on the motions was heard May 19, 1982. The same judge denied both motions, entered findings of fact and conclusions of law, and sentenced the Osbornes for 25 and 20 years. They appeal this ruling.

A short time before oral argument in this court, the Osbornes filed a motion for leave to amend their pro se brief to incorporate the report of Dr. Thomas Goodman, dated February 24, 1982. No amendment of the brief is necessary because the report was contained in the record, was considered by the trial judge in ruling on the motion, and was taken into consideration by the panel in passing upon the issues raised in this appeal.

The defendants contend their motions to withdraw the guilty pleas should have been granted because Mary Osborne's mental condition rendered both pleas involuntary and because they were denied effective assistance of counsel, two indicia establishing "manifest injustice" under CrR 4.2(f).[1] *State v. Taylor*, 83 Wn.2d 594, 597–98, 521 P.2d 699 (1974).

We first address the Osbornes' contention that their pleas were not voluntary. They point to evidence in the record indicating Mary Osborne was suffering from severe posttraumatic stress syndrome at the time her guilty plea was entered, and argue this proves she was not mentally capable of making a voluntary plea. They contend she, in turn, coerced Everett Osborne into pleading guilty by threatening to commit suicide if he chose to go to trial and she was required to testify, likewise rendering his plea involuntary.

When a defendant's competency to accept an attorney's advice and voluntarily plead guilty is questionable, the court should not accept an equivocal guilty plea. *Woods v. Rhay*, 68 Wn.2d 601, 605, 414 P.2d 601, *cert. denied*, 385 U.S. 905 (1966); *State v. Stacy*, 43 Wn.2d 358, 261 P.2d 400 (1953). Mary Osborne contends her fear of trial and her mental condition made her mentally incompetent. The trial judge did not agree.

■ Agents of the State may not produce a plea by threats of physical harm or by mental coercion overbearing the will of the defendant. *Brady v. United States*, 397 U.S. 742, 750, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970). Subjective fear is not coercion externally applied, and does not render a defendant's plea involuntary. *North Carolina v. Alford, supra* at 30–31. If fear of a trial and the resulting stress were sufficient mental coercion to constitute grounds to

---

[1]CrR 4.2(f) states:

"**(f) Withdrawal of Plea.** The court shall allow a defendant to withdraw his plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice."

avoid trial or withdraw a plea, no doubt many defendants could claim their pleas were coerced.

At the hearing on the motion to withdraw the plea, the judge considered the psychiatrist's report dated February 24, 1982, and found it insufficient evidence of Mary Osborne's lack of mental competency to enter a knowing and voluntary plea. The report reveals Mary Osborne was severely depressed and had threatened suicide while incarcerated and awaiting trial. She was restrained while in her jail cell to prevent her from harming herself. The report states the doctor's opinion that Mary Osborne's ability to rationally cooperate in her legal defense was "compromised because of her mental condition." The doctor stated, "[S]he appears to have the ability to intellectually understand the nature of the charges" but her emotional state "interfer[e]s with her ability to fully appreciate and face her involvement in the reality of the events". The trial judge properly determined the weight to be given this opinion evidence as to her competence. He observed her demeanor in court, questioned her as to her understanding, and observed her again at the hearing on motion to withdraw her plea. Those observations were evidence properly considered by the judge. *State v. Ashley,* 16 Wn. App. 413, 558 P.2d 302 (1976). *See also State v. Loux,* 24 Wn. App. 545, 604 P.2d 177 (1979).

Everett Osborne was in no way compelled to plead guilty by the actions of the State. He does not assert he pleaded guilty in exchange for a promise of lenient treatment for Mary Osborne or due to any coercion by the State. *See State v. Cameron,* 30 Wn. App. 229, 231, 633 P.2d 901 (1981). Instead, he asserts he entered his plea because coerced by his wife's threats to commit suicide or "destroy their relationship." This type of mental pressure from family members is no doubt present in many criminal cases, but it is beyond the control of the State. *See State v. Frederick,* 32 Wn. App. 624, 629–30, 648 P.2d 925 (1982), *review granted,* 98 Wn.2d 1015 (1983).

The trial judge conducted the required evidentiary hear-

ing to determine the mental condition of both defendants at the time they entered the pleas, and found they had "failed to establish by evidence that the defendants' pleas of guilty were rendered involuntary due to the mental state of either defendant." Finding of fact 4. The record supports this finding that both defendants were mentally competent to freely and voluntarily enter their pleas.

In their pro se brief, the Osbornes contend the trial judge gave only a cursory application of CrR 4.2(d)[2] and did not determine the factual basis for the pleas, so the pleas were constitutionally insufficient, citing *State v. Rinier*, 93 Wn.2d 309, 609 P.2d 1358 (1980). Again, we do not agree.

■ The necessary factual basis required for a plea under CrR 4.2(d) may be established from sources other than the admissions of the defendant. *State v. Newton*, 87 Wn.2d at 369. The prosecutor's recitation of facts in the affidavit of probable cause constitutes a sufficient factual basis if evidence of those facts would support a jury finding of guilt. *State v. Taylor, supra.* The prosecutor's affidavit recited factual allegations from reliable sources which would have supported jury findings that Shelly Everett was repeatedly assaulted, causing injuries which resulted in her death.[3] The necessary factual basis for the plea was established.

---

[2]CrR 4.2(d) states:

"**(d) Voluntariness.** The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

[3]The affidavit states, in part,

"That the autopsy by Dr. Bonnel at the King County Medical Examiner's Office, indicates Shelly died of a blunt impact to the abdomen that resulted in a perforation of the small bowel; that the injury is inconsistent with falling down stairs and is consistent with being forcefully struck or kicked; that the injury was inflicted 24 to 40 hours prior to death; that Shelly's body was covered with bruises on almost every part of her body; that her legs had so many bruises of varying ages that separate bruises were barely distinguishable; that she also had bruises on her arms, breasts, chest and back; that she had two subdural hematomas, a recent, three- to four-day-old one that was of significant seriousness;"

The Osbornes also contend in their pro se brief that the judge erred in failing to inform them that intent is an element of assault, the underlying felony on which the second degree murder charge was based.[4] The Osbornes' claim that they were not advised of the element of intent required for conviction of second degree assault amounts to a contention that they did not understand the "nature of the charge" and therefore their pleas were involuntary. *In re Keene,* 95 Wn.2d 203, 622 P.2d 360 (1980). At oral argument, their counsel raised a related argument that, had they been represented by competent counsel, the Osbornes would have known they had the option of pleading not guilty and risking conviction of a lesser included offense, requiring proof of a less culpable mental state.

█ A defendant must be advised of the essential elements of the offense—to be given sufficient notice of what he is being asked to admit—prior to the court's acceptance of a plea of guilty. *Henderson v. Morgan,* 426 U.S. 637, 647, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976); *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980). *See also McCarthy v. United States,* 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969). The Osbornes were not specifically advised on the record that intent is an essential element of the crime of assault in the second degree underlying second degree felony murder as charged under RCW 9A.32.050(1)(b). The Osbornes were informed at the hearing of the elements of second degree murder as follows:

THE COURT: . . . I will ask the prosecutor to state to

---

[4]Intent to kill is not an element of second degree felony murder. *State v. Wanrow,* 91 Wn.2d 301, 588 P.2d 1320 (1978). Washington follows the minority rule that where the underlying felony is an assault and inherent in the homicide, the assault does not merge into the resulting homicide. "While it may be that the felony murder statute is harsh, and while it does relieve the prosecution from the burden of proving intent to commit murder, it is the law of this state." *State v. Thompson,* 88 Wn.2d 13, 17, 558 P.2d 202 (1977); *State v. Harris,* 69 Wn.2d 928, 421 P.2d 662 (1966); *State v. Safford,* 24 Wn. App. 783, 604 P.2d 980 (1979).

The theoretical basis of felony murder is that general malice (not intent to kill) may be inferred from the malicious felonious intent which must be present to prove the underlying felony. *State v. Wanrow, supra* at 306.

both the defendants and counsel the elements of the crime charged. You may proceed.

Ms. WALTON: In the charge of the crime of murder in the second degree, the elements are as follows:

That the defendants, and each of them, in King County, Washington, during a period of time intervening between November 13 and December 9, 1981, while committing and attempting to commit the crime of assault in the second degree, and in the course of and in furtherance of said crime and in immediate flight therefrom, did cause the death on or about December 9, 1981, of Shelly L. Everett, a human being who was not a participant in the crime.

CrR 4.2(f) allows withdrawal of a plea of guilty whenever necessary to correct a manifest injustice. If a defendant pleads guilty without specific advice of all elements of the offense, does this amount to a manifest injustice? We need go no further in answering this question than to point out that in this case the requirements of CrR 4.2(d) were met. *State v. Ridgley,* 28 Wn. App. 351, 623 P.2d 717 (1981).

The information advised the Osbornes of the underlying offense of second degree assault, which is knowingly inflicting grievous bodily harm upon another with or without a weapon. RCW 9A.36.020(1)(b). "Knowingly" is defined as being aware of a fact, facts, or circumstances or result described by law as being a crime. WPIC 10.02; *State v. Parr,* 93 Wn.2d 95, 606 P.2d 263 (1980); *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980).

"Grievous bodily harm" is any serious hurt or injury or a hurt or injury that is seriously painful or hard to bear. It need not be a permanent injury. WPIC 2.04; *State v. Salinas,* 87 Wn.2d 112, 121, 549 P.2d 712 (1976).

The affidavit of probable cause and witness statements, both of which had been reviewed by the Osbornes with their attorneys, referred to the victim having been "beaten," "struck," and "kicked" on repeated occasions. The words "beaten," "struck," and "kicked" all describe intentional acts. Knowledge by the Osbornes of the difference between intentional acts and "accidents" is suggested

by reference in their affidavits to a contemplated defense that Shelly's injuries were the result of an accidental fall. The autopsy reports, witness statements, and photographs of the victim's body providing evidence of extremely forceful blows were also reviewed by the Osbornes and their attorneys prior to entering the pleas. It would require closing one's eyes to reality to conclude the Osbornes were unaware they were charged with knowingly inflicting serious or painful hurt or injury on Shelly Everett which caused her death.

The law places a heavy burden on defendants if they are to satisfy the requirements of CrR 4.2(f) permitting withdrawal of a plea of guilty. *State v. Taylor,* 83 Wn.2d 594, 521 P.2d 699 (1974). The burden cannot be met by showing what, at most, was a technical error in taking of the plea. *State v. Ridgley, supra.* The Osbornes have not established that the judge's failure to inform them of the elements of assault in the second degree resulted in manifest injustice.

■ The Osbornes also contend they were denied effective assistance of counsel. They recognize their burden is to prove they were denied effective representation, and that they were prejudiced, citing *State v. Adams,* 91 Wn.2d 86, 586 P.2d 1168 (1978); *State v. Myers,* 86 Wn.2d 419, 545 P.2d 538 (1976); *State v. Gilmore,* 76 Wn.2d 293, 456 P.2d 344 (1969). The standard for effective representation in the context of guilty pleas is that of reasonably effective assistance, considering the particular client and the surrounding circumstances of the case. *State v. Cameron,* 30 Wn. App. 229, 633 P.2d 901 (1981).

Inadequate preparation of trial counsel may constitute ineffective assistance, violating a defendant's Sixth Amendment right to representation. *Herring v. Estelle,* 491 F.2d 125, 129 (5th Cir. 1974). *See generally Baty v. Balkcom,* 661 F.2d 391 (5th Cir. 1981), *cert. denied,* 456 U.S. 1011 (1982); *Kemp v. Leggett,* 635 F.2d 453 (5th Cir. 1981). The Osbornes assert their counsel's inadequate preparation, coupled with Mary Osborne's inability to communicate with counsel, directly resulted in the prejudicial guilty pleas

which must be withdrawn to avoid manifest injustice. They argue that both attorneys were convinced of their guilt, made no real effort to develop a meritorious defense, made only a limited investigation of potential witnesses, and lost evidence which could have established reasonable doubt as to the prosecutor's theory of the case. We do not agree.

The record reflects counsel thoroughly reviewed the evidence with the Osbornes, obtained an independent autopsy report, and spent time and effort conferring with them, with witnesses, and with the prosecutor's office on their behalf. This is evidence of counsel's actual and substantial assistance to the Osbornes. Counsel advised the Osbornes of the likelihood of conviction at trial, and based on counsel's advice, the Osbornes signed statements indicating they decided to plead guilty in order to obtain shorter sentencing recommendations.

The Osbornes also cited evidence of a letter which was mailed to Mary Osborne's counsel but which he denied receiving. A review of the affidavit supporting this claim fails to establish how the evidence would have been relevant to any prosecutorial or defense theory. The only defensive theory revealed by the record was the Osbornes' statement that Shelly Everett's injuries were caused by a fall. That defense was refuted by the autopsy report.

Trial counsel and the trial judge carefully followed CrR 4.2. The State's evidence had been reviewed and evaluated by defense counsel as overwhelming. An autopsy had been independently conducted. In the face of such strong evidence, reasonably competent and effective defense counsel could conclude the defendant's best interests would be served by taking advantage of a prosecutor's offer to reduce sentencing recommendations. The defendants have not established that this deliberate tactical choice or judgment was the result of ignorance or inadequate pretrial investigation. *State v. Cameron, supra; Herring v. Estelle, supra. See also State v. Sims,* 248 S.E.2d 834 (W. Va. 1978); *Missouri v. Turley,* 443 F.2d 1313 (8th Cir. 1971).

The order is affirmed.

WILLIAMS and RINGOLD, JJ., concur.

Reconsideration denied November 1, 1983.

Review granted by Supreme Court January 20, 1984.