

FILED
MARCH 28, 2025
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39765-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| KEVIN WADE ZIMMERMAN, | ) | |
| | ) | |
| Appellant. | ) | |

HAZEL, J.P.T.[†] — A jury found Kevin Zimmerman guilty of two counts of delivering a controlled substance and two counts of possession with intent to deliver. Each count included findings for the aggravating factor that the current offense involved "at least three separate transactions in which controlled substances were sold" and each of those four counts referred to a single transaction. Clerk's Papers (CP) at 151, 153, 155, 157. Mr. Zimmerman's criminal history included five Oregon felony convictions that the sentencing court counted toward the offender score calculation.

On appeal, Mr. Zimmerman argues (1) his five Oregon convictions are not comparable to Washington statutes and should not have been included in his offender score, (2) substantial evidence does not support the aggravating circumstance of a major

---

[†] Tony Hazel, an active judge of a court of general jurisdiction, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).

violation of the Uniform Controlled Substances Act (UCSA), chapter 69.50 RCW, and

(3) his legal financial obligations should be struck. For the most part, we disagree that

Mr. Zimmerman's Oregon convictions are not comparable to Washington statutes but

remand because substantial evidence fails to support the aggravating circumstance of a

major violation of the UCSA. Mr. Zimmerman raises several other issues for review in a

statement of additional grounds for review. We find none persuasive. We remand for a

full resentencing consistent with this opinion and to strike the VPA and DNA collection

fees.

## FACTS

Mr. Zimmerman was found guilty by a jury of two counts of delivering a

controlled substance and two counts of possession with intent to deliver, including four

findings from the jury that each count was "one of at least three separate transactions in

which controlled substances were sold, transferred, or possessed with intent to do so."

CP at 151, 153, 155, 157. Each count individually referred to a single transaction. The

State maintained that each separate surrounding count within the information served to

establish the "three separate transactions" for each count despite the aggravator statute's

express reference to "[t]he current offense" involving multiple (at least three) controlled

substance transactions based on RCW 9.94A.535(3)(e)(i).

Mr. Zimmerman's trial was continued repeatedly. Some of these continuances were with his consent. Some were because Mr. Zimmerman failed to appear. A number were granted so that defense counsel could locate and interview witnesses, among other discovery issues. One of the continuances was granted because of Mr. Zimmerman's counsel's illness.

At sentencing, the trial court determined that Mr. Zimmerman's offender score should include criminal history from five Oregon felonies, including two first degree theft convictions, one second degree burglary conviction, one aggravated first degree theft conviction, and one third degree robbery conviction. Mr. Zimmerman's counsel stated the following during sentencing concerning the foreign convictions and when specifically addressing the topic of legal comparability:

> I reviewed the documents that were provided by the State. I reviewed the statutes in question. They appear to be synonymous with the Washington statutes. So, we could do a full comparability analysis here. But, based on my understanding of the law and my understanding of the case law, the comparability analysis will probably be met.

2 Rep. of Proc. (May 30, 2023) (RP) at 594. There is no indication from the record that the sentencing court relied on defense counsel's comments. Instead, the sentencing court conducted its own legal comparability analysis, ultimately finding that "Washington's statutes and Oregon's statutes . . . pretty much, if not almost identically, mirror each other." *Id*. at 595-96.

The sentencing court also found that Mr. Zimmerman was indigent by checking

the box contained within the judgment and sentence. It nevertheless imposed a $500

victim penalty assessment (VPA) and a $100 DNA collection fee.

ANALYSIS

*Prior convictions*

A defendant's prior convictions may be used to determine their offender

score. *State v. Arndt*, 179 Wn. App. 373, 377, 320 P.3d 104 (2014). Comparable

out-of-state or foreign felony convictions should also be included in calculating the score.

RCW 9.94A.525(3). We review de novo the trial court's offender score calculation.

*State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187 (2014).

When deciding whether a foreign or out-of-state conviction should be included

in an offender score, the sentencing court must undertake a potentially two-part

comparability analysis. Whenever performing a comparability analysis for out-of-state or

foreign convictions, the sentencing court first compares the elements of the crimes to

determine if they are legally comparable and thus includable. *In re Pers. Restraint of

Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005). The appropriate analytical exercise to

ascertain legal comparability requires a sentencing court to directly compare the foreign

statutory criminal elements applicable at the time of the foreign offense with the most

similarly titled or potentially comparable Washington felony criminal elements in effect

4

at the time of the offense. *See id.* If the elements are the same or substantially similar, then the out-of-state or foreign crime and the Washington crime are deemed legally comparable, and the sentencing court should, therefore, include that out-of-state conviction in the defendant's offender score calculation without any further comparability analysis necessary. *See id.*

However, where a Washington offense is narrower or otherwise contains elements not found in the out-of-state offense, the two statutes are not substantially similar, and thus, the foreign crime is not legally comparable as a matter of law. *See id.* Whenever legal comparability is not established, additional analysis will then be required to determine whether the out-of-state crime is factually comparable. *See In re Pers. Restraint of Crawford*, 150 Wn. App. 787, 797, 209 P.3d 507 (2009). Thus, to include any out-of-state or foreign convictions toward a defendant's offender score, a comparability analysis will potentially involve a two-step analytical process (i.e., STEP ONE: determine legal comparability; STEP TWO: only if needed, determine factual comparability).

If legal comparability falls short, the sentencing court must then look at the underlying criminal conduct tied to the conviction by a careful examination of the foreign conviction record as laid out in the indictment or information to determine whether that same conduct (if deemed established) would have violated any Washington felony

criminal statute in effect at the time of the offense. *Id*. When comparing the defendant's

conduct, the court must examine the Washington statute in effect when the foreign crime

was committed to determine comparability, as this ensures that the comparison is

accurate and relevant to the legal standards applicable at the time of the offense. *Lavery*,

154 Wn.2d at 255 (citing *State v. Morley*, 134 Wn.2d 588, 605-06, 952 P.2d 167 (1998)).

In short, the analytical exercise employed to ascertain factual comparability requires a

comparison of the defendant's conduct to any comparable Washington criminal statute.

Special attention is necessary to ensure that the foreign record sufficiently and lawfully

establishes the conduct. If such conduct is established by the foreign record and that same

conduct would also violate a Washington felony criminal statute, the foreign conviction

shall be countable toward a defendant's offender score. *Id*.

Alternatively, if a defendant affirmatively stipulates that an out-of-state conviction

is legally comparable, that conviction is appropriately included in the offender score

without requiring a sentencing court to analyze further. *In re Pers. Restraint of Canha*,

189 Wn.2d 359, 366, 402 P.3d 266 (2017). However, a defendant, either orally or in

writing, must affirmatively acknowledge both the existence of the foreign conviction(s)

and make an affirmative concession that legal comparability is met, established, or

otherwise agreed to by the defense. In the absence of such an affirmative stipulation, the

sentencing court must then undertake the potential two-step comparability analysis to

assess whether any out-of-state conviction(s) will be included in the offender score;

failure of a defendant to object to inclusion of a conviction is not enough. *State v. Ross*,

152 Wn.2d 220, 233, 95 P.3d 1225 (2004); *State v. Zamudio*, 192 Wn. App. 503, 508,

368 P.3d 222 (2016). Moreover, defense statements that fall short of an affirmative

stipulation require the sentencing court to perform the potential two-step comparability

analysis. *See Zamudio*, 192 Wn. App. at 507-09.

During sentencing, Mr. Zimmerman's counsel alluded to the legal comparability

of his Oregon convictions, stating:

> I reviewed the documents that were provided by the State. I reviewed the
> statutes in question. They appear to be synonymous with the Washington
> statutes. So, we could do a full comparability analysis here. But, based on
> my understanding of the law and my understanding of the case law, the
> comparability analysis will probably be met.

RP at 594. Whenever a sentence is based on an incorrect offender score, such error is

considered a fundamental defect that inherently results in a miscarriage of justice,

warranting resentencing based on the correct offender score. *In re Pers. Restraint of

Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002). On appeal, Mr. Zimmerman asserts

that because defense counsel's statements fall short of any affirmative stipulation and that

the sentencing court also conducted its own independent legal comparability analysis, we

should review the sentencing court's analysis.

*Legal comparability (STEP ONE of comparability analysis)*

The sentencing court found through its own analysis that Oregon's first degree theft statute was legally comparable to Washington's second degree theft statute and that Oregon's aggravated first degree theft statute was also legally comparable to Washington's first degree theft statute. Oregon's first degree theft statute, OR. REV. STAT. § 164.055, and aggravated first degree theft statute, OR. REV. STAT. § 164.057, both turn on committing "theft" as described in OR. REV. STAT. § 164.015. Washington's first and second degree theft statutes are similarly predicated on a person committing "theft," described in RCW 9A.56.020. RCW 9A.56.030 (first degree theft); RCW 9A.56.040 (second degree theft).

One way to commit theft in Oregon is via theft of lost or mislaid property. OR. REV. STAT. § 164.015(2). This version of theft requires that a person "knows *or has good reason to know*" that property was lost or mislaid to commit theft. OR. REV. STAT. § 164.065 (emphasis added). In Washington, however, theft of lost or mislaid property only occurs when "the actor *knows* [the property] to have been lost or mislaid." RCW 9A.56.010(2) (emphasis added). Oregon's theft by receiving statute, OR. REV. STAT. § 164.095(1), similarly applies when one "receives, retains, conceals or disposes of property of another knowing *or having good reason to know* that the property was the subject of theft." (Emphasis added.) Washington, meanwhile, requires one to

8

"*know*[ ] that [stolen property] has been stolen." RCW 9A.56.140(1) (emphasis added). The broader mental state requirements under the Oregon statute(s) for both crimes show that one can commit theft, and thus first degree and aggravated first degree theft, in Oregon in ways that would not be completed crimes under Washington's statutory counterparts. Because of differing crime elements, the Oregon theft statutes are not legally comparable to Washington's felony theft statutes. *Cf. Lavery*, 154 Wn.2d at 255-56 (holding that a federal bank robbery statute was not legally comparable to Washington's second degree robbery statute because the federal statute had a broader intent requirement). Because legal comparability is lacking, an additional factual comparability analysis will be required to determine if these two Oregon convictions for first degree and aggravated first degree theft will be includable toward the offender score.

The sentencing court found that Oregon's second degree burglary statute was legally comparable to Washington's second degree burglary statute. Oregon allows a conviction for second degree burglary if the person "enters or remains unlawfully in a building with intent to commit a crime therein." OR. REV. STAT. § 164.215(1). For the purposes of burglary in Oregon, the statute's inclusion of the word "building" also expressly encompasses "any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein." OR. REV. STAT. § 164.205(1).

On the other hand, Washington finds a person guilty of second degree burglary only "if, with intent to commit a crime *against a person or property therein*, he or she enters or remains unlawfully in a building *other than a vehicle or a dwelling*." RCW 9A.52.030(1) (emphasis added). Washington's definition of second degree burglary is thus narrower concerning the intent (mens rea) and provides more restrictive structural criteria for the term "building." By similar logic, Oregon's statute is broader than Washington's by including more varied structural criteria for the term "building" and additional intent criteria not applicable to Washington. The statutes are, therefore, not legally comparable as there could be ways to violate or complete Oregon's crime without necessarily completing the comparable crime in Washington. Moreover, the two statutes have different elements and are not legally comparable. Additional analysis for factual comparability will be necessary to determine if the second degree burglary conviction from Oregon will appropriately count toward the offender score.

The sentencing court found that Oregon's third degree robbery statute was legally comparable to Washington's second degree robbery statute. A person commits third degree robbery in Oregon if

> in the course of committing or attempting to commit theft or unauthorized use of a vehicle . . . the person uses or threatens the immediate use of physical force upon another person with the intent of:
> (a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

(b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle.

OR. REV. STAT. § 164.395(1). Meanwhile, Washington defines second degree robbery as "commit[ting] robbery." RCW 9A.56.210(1). In Washington,

[a] person commits robbery when he or she unlawfully takes personal property from the person of another or in her or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone.

RCW 9A.56.190.

Washington's and Oregon's statutes are different in three ways: (1) Washington requires taking personal property from someone's person or presence, (2) the Oregon statute allows for conviction when force is used to compel someone to aid in the taking, whereas Washington's definition does not include such language, and (3) Oregon allows for conviction if the theft was merely attempted, which Washington does not.

Thus, Oregon's third degree robbery and Washington's second degree robbery statutes are not legally comparable, as the elements differ. None of Mr. Zimmerman's five Oregon convictions are legally comparable and therefore additional analysis to ascertain factual comparability is required.

11

*Factual comparability (STEP TWO if needed: use when legal comparability is in doubt)*

For purposes of factual comparability analysis, the court may only consider "facts that were admitted, stipulated to, or proved" beyond a reasonable doubt. *Canha*, 189 Wn.2d at 367. Thus, the sentencing court may consider facts conceded by the defendant in a prior guilty plea. *Arndt*, 179 Wn. App. at 381. A guilty plea, however, only concedes those facts that relate to the *essential and material elements* of the crime as stated in the indictment. *State v. Bunting*, 115 Wn. App. 135, 142, 61 P.3d 375 (2003). Therefore, the appropriate analytical tool employed when undertaking a factual comparability analysis is to determine whether a defendant's conduct, underlying a foreign conviction, has been sufficiently established by the foreign record and, only if lawfully established, whether such conduct would violate any comparable felony criminal statute in effect in Washington at that time of the offense. *Lavery*, 154 Wn.2d at 255.

> "[W]hile it may be necessary to look into the record of a foreign conviction to determine its [factual] comparability to a Washington offense, the elements of the charged crime must remain the cornerstone of the comparison. Facts or allegations contained in the record, if not directly related to the elements of the charged crime, may not have been sufficiently proven in the trial."

*Id.* (quoting *Morley*, 134 Wn.2d at 606). "Where the foreign statute is broader than Washington's, that [factual comparability] examination may not be possible because

12

there may have been no incentive for the accused to have attempted to prove that he did not commit the narrower offense." *Id.* at 257.

Additionally, to include a foreign conviction in a defendant's offender score calculation, the existence of any conviction and its comparability to a Washington felony must be proved by the State by a preponderance of the evidence or on a more likely than not basis. *State v. Thiefault*, 160 Wn.2d 409, 158 P.3d 580 (2007).

The first Oregon conviction was for first degree theft committed on June 6, 2012. Mr. Zimmerman pleaded guilty. The Oregon information stated that Mr. Zimmerman "did unlawfully and knowingly commit theft of jewelry and various personal property . . . of a total value of $1,000 or greater." CP at 173. In this case, despite the different intent requirements preventing legal comparability between the Oregon and Washington felony theft statutes, examination of the foreign charging language corresponding with a subsequent guilty plea, establishes that Mr. Zimmerman would have *knowingly* committed the second degree theft under Washington's felony theft statute, as both Washington's specific intent requirement and all other essential elements under Washington's second degree theft statute are satisfied by Oregon's precise charging language. In both Washington and Oregon, the effect of a guilty plea admits the essential and material elements of the crime. *Blain v. Cain*, 327 Or. App. 584, 590, 536 P.3d 623 (2023), *review denied*, 32 Or. 22, 543 P.3d 1238 (2024); *see also Bunting*, 115 Wn. App.

13

at 142. Although the Oregon charging information does not specify how Mr. Zimmerman committed theft, it nevertheless provides sufficient factual context to establish the defendant's intent, conduct, and all other essential elements of the Washington felony crime of second degree theft.

If a foreign charging document (indictment or information) alleges facts or circumstances that go beyond the essential elements of the foreign criminal statute, such facts are not deemed to be established via a guilty plea for purposes of conducting a factual comparability analysis. However, when this court examines only the essential elements of Oregon's criminal first degree theft elements, as mirrored by the Oregon charging information, the conduct matches and corresponds precisely to the elements of second degree theft in Washington and therefore factual comparability is readily established by a preponderance of the evidence standard. Therefore, the above foreign conviction for first degree theft should be included in the defendant's offender score calculation.

The second Oregon conviction is a different first degree theft conviction charged with a different victim also committed on June 6, 2012. Mr. Zimmerman similarly pleaded guilty. The Oregon information stated that Mr. Zimmerman "did unlawfully and knowingly commit theft of jewelry and various personal property, of a total value of $10,000 or more." CP at 185. Analysis of Oregon's charging language, when compared

14

to only the essential elements of both the Oregon and Washington statutes, similarly

resolves the intent issue between the statutes and specifically establishes the factual

comparability to Washington's second degree theft statute(s). RCW 9A.56.040. First,

Oregon's charging language does not exceed the material and essential elements of the

Oregon first degree theft statute. In addition, when examining the conduct established

only by the essential elements of the foreign crime flowing from a guilty plea, all

essential elements of Washington's second degree theft statute are precisely satisfied.

Accordingly, this conviction for first degree theft from Oregon should be included or

otherwise count toward the offender score.

The third Oregon conviction is second degree burglary committed on June 6,

2012. Mr. Zimmerman pleaded no-contest to this charge. A plea of no-contest under

Oregon law may only serve as an admission that the prosecution had sufficient

evidence to convict and does not necessarily serve to establish the underlying facts of

conviction in all subsequent proceedings. *State v. Jackson*, 319 Or. App. 789, 791,

511 P.3d 82 (2022). However, even a plea of no-contest under both the laws of

Washington and Oregon satisfies the definition of "conviction." *See generally id*.;

RCW 9.94A.030(9); RCW 9.94A.525(3); OR. REV. STAT. § 135.345; *State v. Roberts*,

255 Or. App. 132, 136, 296 P.3d 603 (2013). Moreover, nothing under either Oregon or

Washington law prohibits the use of no-contest or similar type guilty pleas (i.e., *Alford*,[1]

nolo contendere, or *Barr*[2] style pleas) from inclusion in criminal history for a subsequent

sentencing hearing. *See Roberts*, 255 Or. App. at 136; *see also State v. Heath*, 168 Wn.

App. 894, 899-901, 279 P.3d 458 (2012). Therefore, a plea of no-contest does not

generally impact or affect comparability analysis within the narrow context of criminal

history scoring.

The relevant Oregon charging information stated that Mr. Zimmerman "did

unlawfully and knowingly enter a dwelling . . . with the intent to commit the crime

of theft therein." CP at 191. Oregon's second degree burglary would not be factually

comparable to second degree burglary in Washington, which requires that the person

"enters or remains unlawfully in a building *other than a vehicle or a dwelling*."

RCW 9A.52.030(1) (emphasis added). It would, however, be factually comparable to the

Washington felony of residential burglary because "[a] person is guilty [in Washington]

of residential burglary if, with intent to commit a crime against a person or property

therein, the person enters or remains unlawfully in a dwelling other than a vehicle."

RCW 9A.52.025(1). The Oregon charging information related to this count, and as

established by a no-contest plea, sufficiently establishes that Mr. Zimmerman's conduct

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 267, 684 P.2d 712 (1984).

16

corresponded precisely to Washington's residential burglary elements because he did "knowingly enter a dwelling . . . with the intent to commit the crime of theft therein." CP at 191. Thus, Oregon's second degree burglary conviction is factually equivalent to residential burglary in Washington. This conviction should, therefore, count toward Mr. Zimmerman's offender score.

It is important to note that a no-contest plea or similar style of guilty plea usually does not serve to establish the factual or circumstantial context surrounding the conviction in any other evidentiary proceeding outside of this narrow context of includability for purposes of offender score criminal history calculations. For example, ER 803(22) establishes that a judgment from a previous conviction is not a recognized exception to hearsay if *it flows from a plea of nolo contendere*. However, as previously indicated, because Oregon's sentencing statute expressly defines the term "conviction(s)" to include pleas of no-contest and Washington case law similarly establishes that either a no-contest or *Alford*-style guilty plea should be included in offender score calculations, such a narrow purpose is consistent with the legislative intentions and directives of both states. RCW 9.94A.030(9); RCW 9.94A.525(3); OR. Rev. Stat. § 135.345. To rule otherwise would go against the Washington Legislature's express desire for out-of-state comparable convictions to be considered under Washington's Sentencing Reform Act of 1981, chapter 9.94A RCW. *See* RCW 9.94A.525(3); *see also*

17

*Heath*, 168 Wn. App. at 899-901. Constitutional due process is nevertheless preserved

within the narrow context of offender score criminal history because any plea of no-

contest or similar *Alford*-style plea would necessarily include procedural requirements

and safeguards that ensure any defendant would be advised of the essential elements of

the offense pleaded to and a court finding that a factual basis exists to accept such a plea.

These procedural safeguards are in place at the time of any plea, regardless of the style

of a guilty plea. *See State v. Osborne*, 35 Wn. App. 751, 757, 669 P.2d 905 (1983), *aff'd*,

102 Wn.2d 87, 684 P.2d 683 (1984); *Henderson v. Morgan*, 426 U.S. 637, 647, 96 S. Ct.

2253, 49 L. Ed. 2d 108 (1976). Therefore, pleas of nolo contendere, *Alford*-style pleas, or

similarly styled guilty pleas do not usually affect or implicate the legal or factual

comparability analysis unless the foreign jurisdiction of origin prohibits those styles of

convictions from inclusion in criminal history. Oregon has no such prohibition, so Mr.

Zimmerman's no-contest guilty plea should be included within his offender score

calculation after applying the same factual comparability analysis.

The fourth Oregon conviction is aggravated first degree theft committed on

June 6, 2012, but with a different victim. Mr. Zimmerman pleaded guilty to the charge.

The information stated that Mr. Zimmerman "did unlawfully and knowingly commit theft

of jewelry, of a total value of $10,000 or more." CP at 199. The foreign record similarly

resolves the Oregon and Washington intent discrepancy issue because Mr. Zimmerman

pleaded guilty to "knowingly" committing theft. Additionally, the $10,000 total value is higher than the threshold value of $5,000 contained in Washington's first degree theft statute. RCW 9A.56.030(1)(a). Mr. Zimmerman's aggravated first degree theft conviction is factually comparable to first degree theft in Washington and such factual comparability is established via the essential elements of the Oregon crime, which are deemed admitted flowing from the effect of a guilty plea. Since the conduct established by the guilty plea would violate Washington's first degree theft elements if such conduct had been perpetrated in Washington, the conviction is appropriately included within Mr. Zimmerman's offender score.

The fifth Oregon conviction is third degree robbery committed on June 14, 2013. Mr. Zimmerman pleaded guilty. The information stated that Mr. Zimmerman "did unlawfully and in the course of attempting to commit theft, use or threaten the immediate use of physical force on employee(s) of Walmart, with the intent of preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking." CP at 206. The Oregon information, however, fails to state or address whether Mr. Zimmerman was in the presence of any Walmart employees. Although that fact seems very likely, even where "mathematical deduction or speculation" could support factual comparability, facts not demonstrated in the indictment or information do not serve to establish factual comparability. *Crawford*, 150 Wn. App. at 797-98.

19

Therefore, the foreign record does not establish the factual comparability of the Oregon third degree robbery conviction because an essential criminal element necessary for Washington's robbery statute is missing.

We conclude that all of Mr. Zimmerman's Oregon convictions except for his robbery conviction are factually comparable. Therefore, four of Mr. Zimmerman's Oregon convictions should count toward his offender score but the robbery conviction should not.

*Aggravated sentence*

Mr. Zimmerman asserts that the trial court erred in its reasons for imposing an aggravated sentence. The trial court identified three reasons to impose an exceptional sentence: the multiple drug transaction aggravator under RCW 9.94A.535(3)(e)(i) (relating to major violations of the Uniform Controlled Substances Act), the "overwhelming evidence presented at trial," and the recency of Mr. Zimmerman's previous convictions. CP at 285.

An illegal or erroneous sentence may be challenged for the first time on appeal. *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999). "'A justification for the rule is that it tends to bring sentences into conformity and compliance with existing sentencing statutes and avoids permitting widely varying sentences to stand for no reason other than the failure of counsel to register a proper objection [before] the [sentencing] court.'"

*Ross*, 152 Wn.2d at 229 (quoting *State v. Paine*, 69 Wn. App. 873, 884, 850 P.2d 1369 (1993)). Reversing an exceptional sentence requires us to find "[e]ither that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense." RCW 9.94A.585(4)(a). We review de novo whether the record supports the reasons supplied by the sentencing court for sufficiency of the evidence and whether those reasons justify a sentence outside the standard range. *State v. Griffin*, 173 Wn.2d 467, 474, 268 P.3d 924 (2012).

We recently decided the same issue posed by the multiple drug transaction aggravator in *State v. Haas*, 33 Wn. App. 2d 344, 561 P.3d 299 (2024). In *Haas*, we held that multiple drug transactions must be charged in the same count for the multiple transaction aggravator to apply. *Id.* at 349-50. Mr. Zimmerman's drug transactions were charged in separate counts. Under our recent holding in *Haas*, the prosecutor erred by charging the aggravator for each separate count and by relying solely on the separately charged surrounding counts to establish the multiple controlled substances transactions. Accordingly, the sentencing court understandably erred in relying on the multiple transaction aggravator for purposes of imposing an exceptional sentence.

Similarly, "overwhelming evidence presented at trial" is not an enumerated statutory factor supporting an exceptional sentence, as the quantity or quality of evidence

21

does not serve the purpose of the exceptional sentence statute. "Exceptional sentences are intended to impose additional punishment where the particular offense at issue causes more damage than that contemplated by the statute defining the offense." *State v. Davis*, 182 Wn.2d 222, 229, 340 P.3d 820 (2014). The amount or quality of evidence supporting a conviction is an entirely independent inquiry from the severity of the underlying crime. Accordingly, the amount or quality of evidence may not be factors used or considered to justify the imposition of an exceptional sentence. *Id.*

Rapid recidivism may be used to support an exceptional sentence. RCW 9.94A.535(3)(t). What constitutes rapid recidivism depends on the circumstances of each case. *See State v. Combs*, 156 Wn. App. 502, 506, 232 P.3d 1179 (2010) (holding that, although six months might be a short period of time for the rapid recidivism aggravator in some circumstances, it was not a short period of time in the context of an eluding offense after a prison sentence for drug possession). The record does not make it clear when Mr. Zimmerman was last released from incarceration nor did the jury ever find that the rapid recidivism aggravator applied to Mr. Zimmerman's trial or sentence. Any fact considered by a sentencing court for purposes of increasing the penalty beyond the statutory maximum must be proved beyond a reasonable doubt as specifically found by a jury and as codified by RCW 9.94A.535. *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). The record

thus does not support imposing an exceptional sentence because of rapid recidivism due to the lack of a jury finding.

The trial court erred in aggravating Mr. Zimmerman's sentence on the three grounds described above.

*Legal financial obligations*

The trial court imposed a VPA and a DNA collection fee on Mr. Zimmerman. The legislature subsequently amended the relevant statutes to prevent those fees from applying to indigent defendants. LAWS OF 2023, ch. 449, §§ 1, 4. Both changes apply prospectively. *Id*. These changes also apply to cases pending on direct review. *State v. Ramirez*, 191 Wn.2d 732, 749, 426 P.3d 714 (2018).

Although the State encourages us to remand this issue to the superior court to make a factual inquiry into Mr. Zimmerman's indigency, we do not believe it is necessary here. The record contains sufficient evidence of Mr. Zimmerman's indigency. We see no reason to disturb the trial court's finding on the issue.

This case is remanded to strike Mr. Zimmerman's VPA and DNA collection fee.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

*Add'l Ground 1: Speedy trial rights*

Mr. Zimmerman claims that under the Fourteenth Amendment to the United States Constitution his due process rights were violated because at "no time did I sign my rights

away for a fast and speedy trial." Add'l Ground 1. Mr. Zimmerman also alleges that his

attorney moved for continuances in his case over Mr. Zimmerman's multiple objections.

A defendant who is not detained in jail shall be brought to trial within 90 days

unless a continuance is granted, and a jailed defendant shall be brought to trial in 60 days

unless a continuance is granted. CrR 3.3(b). Whether to grant the continuance of a trial

rests within a court's sound discretion, and we will not disturb it on appeal unless the

court "fail[s] to exercise its discretion or manifestly abuse[s] its discretion." *State v.*

*Miles*, 77 Wn.2d 593, 597-98, 464 P.2d 723 (1970). Granting defense counsel's request

for a continuance over the defendant's objection is not necessarily an abuse of discretion.

*State v. Saunders*, 153 Wn. App. 209, 217, 220 P.3d 1238 (2009). "Even when the

defendant objects, the granting of a continuance to allow counsel to adequately prepare

and ensure effective representation does not constitute an abuse of discretion." *State v.*

*Ollivier*, 161 Wn. App. 307, 313, 254 P.3d 883 (2011), *aff'd*, 178 Wn.2d 813, 312 P.3d 1

(2013).

Mr. Zimmerman's trial was initially continued repeatedly with his consent and

because of his multiple failures to appear at hearings. It was then continued repeatedly for

reasons that were clearly intended to allow counsel to adequately prepare and ensure

effective representation for Mr. Zimmerman, such as locating and interviewing late-

revealed alibi witnesses, interviewing a confidential informant involved in the case, and

Mr. Zimmerman's counsel's illness. At no point did the trial court go past the speedy trial deadlines imposed by each continuance. Although his trial was significantly delayed, those delays were caused by Mr. Zimmerman's conduct, granted with his consent, or given for his benefit. When reviewing the various reasons provided for the continuances and when analyzing the continuance record as a whole, at no point did any of these continuances violate Mr. Zimmerman's constitutional speedy trial right nor did any of those continuances exceed the rule-based deadlines prescribed by CrR 3.3. Mr. Zimmerman was neither materially nor substantially prejudiced by any of the continuances granted by the trial court. We find no error.

*Add'l Ground 2: Ineffective assistance of counsel*

Mr. Zimmerman claims he received ineffective assistance of counsel because his attorney "abandon[ed] me, refused to file motions, did not interview witnesses, did not tell me that my rebuttal witnesses for Jacob Level would not be there until [the] day of trial, [and] never went over my trial." Add'l Ground 2. We cannot review a claim raised in the statement of additional grounds if it is too vague to properly inform us of the claimed error. *State v. Hand*, 199 Wn. App. 887, 901, 401 P.3d 367 (2017), *aff'd*, 192 Wn.2d 289, 429 P.3d 502 (2018). Mr. Zimmerman does not specify which (1) motions his attorney refused to file, (2) witnesses his attorney did not interview, or (3) rebuttal witnesses that were not available. It is also unclear what Mr. Zimmerman precisely

25

means by his attorney "never went over [my] trial." Add'l Ground 2. These claims of error(s) are thus too vague to review.

Mr. Zimmerman also mentions telling his attorney that "Destiny's statement in trial [was] different from discovery" and that he has a "notarized letter from the person who really sold the drugs to Destiny." *Id*. It is unclear what error Mr. Zimmerman attaches to this statement to his attorney, but the record also contains no indication that Destiny changed her testimony at trial. We address the notarized letter in the next SAG.

*Add'l Ground 3: Sufficiency of the evidence*

Mr. Zimmerman claims that there was insufficient evidence to convict him beyond a reasonable doubt because his "DVR, and phone and [a] notarized letter prove my innocence." Add'l Ground 3. These materials appear to be outside the record on review. This court cannot consider new evidence on direct appeal. *State v. Irwin*, 191 Wn. App. 644, 660, 364 P.3d 830 (2015). If Mr. Zimmerman has facts or evidence outside the record to support this claim, his recourse is to file a personal restraint petition. *Id*. (citing RAP 16.4). The evidentiary record reviewed from trial otherwise supports the jury's convictions on all four counts and when applying sufficiency of the evidence analysis with all reasonable inferences reviewed in the light most favorable to the State. A reasonable jury could have found Mr. Zimmerman guilty on all four counts based on the evidence admitted in trial.

No. 39765-3-III
*State v. Zimmerman*

*Add'l Ground 4: Wrongful conviction*

Mr. Zimmerman claims that he was wrongfully convicted. Besides the bare assertion of his innocence, he does not develop this claim further. This claim is also too vague for us to review. *Hand* 199 Wn. App. at 901.

None of Mr. Zimmerman's additional claims for review affect this court's decision. Accordingly, we deny providing any relief based on Mr. Zimmerman's claims of error.

## CONCLUSION

We remand to the trial court for a full resentencing consistent with this opinion. The $500 VPA and $100 DNA collection fee shall be struck at resentencing.

_____
Hazel, J.P.T.

WE CONCUR:

_____  _____
Lawrence-Berrey, C.J.        Fearing, J.

27